### Horton v. Commonwealth.

(Decided May 6, 1932.)

444

M. M. REDWINE, V. H. REDWINE, JOHN T. REDWINE and SAM SPARKS for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER —
Affirming.

Elijah Horton has appealed from a judgment imposing upon him ten years' confinement in the penitentiary for manslaughter.

In the year 1883 some one shot and killed Bud Mainous. Horton was charged with the crime. He fled to Virginia, from there to Texas, thence to Indian Territory, there he married and reared a family; later he removed to Wisconsin, thence to the state of Washington, and about the year 1930 he returned to Kentucky.

On July 17, 1930, an indictment charging Horton with murder was returned by the grand jury under which he was tried with the results noted.

He filed a general demurrer, and what he calls a special demurrer to this indictment, both of which were overruled. This is his special demurrer:

"The defendant demurs specially to the indictment now called for trial because there is another indictment charging the same crime to this defendant pending in this court."

Without deciding whether or not he can raise this question in this way, we will say there is nothing in the record to show such former indictment was ever returned or was then pending, and all we know about it is what he says in his special demurrer.

The proceedings had are presumed to have been regular, and the judgment correct, in the absence of a showing to the contrary. If there were another indictment pending, as he says, he should have manifested that fact in this record. His general demurrer is directed to alleged defects in the indictment. The essential parts of it are:

"The Grand Jury of the County of Elliott, in the name and by the authority of the Commonwealth of Kentucky accuse Elijah Horton of the crime of willful murder, committed in manner and form as follows, to-wit:

"The said Elijah Horton, in the said county of Elliott, on the 14th day of July, 1930 and before the finding of this indictment, did unlawfully, willfully, maliciously, feloniously and of his malice aforethought, kill, slay and murder ———— by shooting and wounding the said Bud Mainous, in and upon the head, body, arms, limbs and person with a pistol, loaded with gunpowder and bullets, or other hard and combustible substances, a deadly weapon from which shooting and wounding the said Bud Mainous *sis* die within a year and a day, *contrary* to the form of the statute in such cases made and provided, and against the peace and dignity of the Commonwealth of Kentucky."

This indictment meets the requirements of sections 122, 123, and 124 of the Criminal Code of Practice. The blank in it did not keep Horton from knowing whom he was charged with killing, and the demurrer to it was properly overruled. The thirty-second word from the end is "sis," it should have been "did," but the letter "d" is next to the letter "s" on a standard typewriter keyboard, such as is in general use, and we are sure this is only a typographical error in the transcription of this

record, and the occurrence of the letter "s" at other points in this record, where the letter "d" should have been, satisfied us this is only a typographical error.

He complains of the instructions given, but we have examined them and find no merit in this complaint.

The defendant offered an instruction under section 238 of the Criminal Code of Practice, but the one given by the court conforms more nearly than his to the Code and is not erroneous. We have often written that this instruction should be in the very words of the Code; still slight variations therefrom are not erroneous.

He contends the verdict is not supported by sufficient evidence. Two witnesses, Sam Mullins and Isaac Smith, testify they were present and saw Horton shoot Mainous and saw him fall, and that only one shot was fired. One of them examined the wound and says it was such a wound as would be produced by a .44 or .45 caliber ball. The defendant denies shooting Mainous, but admits he had a .45 caliber Colt pistol, and testifies that he was then being attacked by Dick Williams and Dave Williams, both desperate men. Dick was armed with a knife and a sled standard or club and Dave with a rock and pistol which he was snapping at the accused, and that he shot at Dave Williams in an effort to prevent Dave from shooting him. He says Trav. Olinger was then present and had a .32 pistol, and that about two weeks later he saw Olinger in Virginia and Olinger told him he had shot Mainous with a .32.

Jane Sloan testifies she was present, that two shots were fired, that Trav. Olinger was there and had a pistol, and that Isaac Smith was not there.

Dr. Strother testified he cut the fatal ball out of the neck of Mainous, and that it was not a .44, but was a .32 or a .38.

Lewis Smith testified he is a brother of Isaac Smith, and that Isaac Smith, R. D. Sparks, Floyd Green, and the witness were playing in a boat on a millpond at the time of the difficulty and out of sight of the shooting. This shooting took place 47 years before this trial. We cannot expect the witnesses to fully agree. This was a question for the jury, and there is no merit in the contention that its verdict is not sustained by the evidence.

He complains because Shady Oliver, one of the jurors, was not a housekeeper, but no complaint was

made of this until after the verdict. Then it was too late. See section 2253, Ky. Stats. He claims to have discovered some new evidence to wit, that he can show by Phoebe Carrol that she was present at this difficulty, and that Isaac Smith was not there, but no affidavits are filed in support of this. He also says he can show he could not have escaped by running to the left of the storehouse because of a cliff that shut off his escape in that direction, but he does not show why he did not show this upon this trial if he knew it then or why he did not discover this sooner. This is more like a new argument than new evidence. He contends the court should have granted him a continuance or should have compelled the commonwealth to allow him to read his affidavit setting out what the evidence of his absent witnesses would be. The court ruled that he might read so much of his affidavit as related to the evidence of Luther Parsons, but could not read that part of it which related to the evidence of R. D. Sparks, because no diligence, to procure the attendance of Sparks, was shown. No subpœna had been issued for Sparks. He never offered to read from his affidavit the evidence of either during the trial.

After careful examination of the record, we find no prejudicial error therein. Judgment affirmed.