## Higgins v. Commonwealth.

Oct. 14, 1941.

W. C. Hamilton for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Wilburn Higgins, having been indicted by the grand jury of Menifee county for the crime of maliciously shooting and wounding Jim Mullins (an offense denounced by Section 1166, Kentucky Statutes), was upon his trial convicted and his punishment fixed at 2 years' confinement in the state penitentiary.

It appears from the record that on April 2, 1940, the day on which this shooting of Jim Mullins occurred, Higgins, his young wife and a Downing boy were driving along highway 40 in Menifee county, trying to locate and visit Mrs. Higgins' parents who had lately moved

into that neighborhood.; also, that Lew Bishop, the prosecuting witness (Jim Mullins) and Oliver Fultz were also driving along the same highway in another car which, Mullins says, he and his friend, Bishop, had bought the day before in Bourbon county, trying it out; that he had come with Bishop over there as he was looking around with a view to purchasing a farm.

He testified that he had previously known Higgins and that when, upon this occasion, they met him on the highway, he got out and shook hands with Higgins "as a friend," after which he, Bishop and one Earl Slater drove on down to Oliver Fultz's home. He states that as they went on towards Frenchburg, Higgins so drove his car that he would repeatedly get in the way in front of them, when he would stop and wait for them; that at such times Lew Bishop and Oliver Fultz were driving with him, and Higgins, his young wife and a Downing boy were driving in the Higgins car. Mullins says they were riding around sightseeing and that the last time they came down the road, after being up on the ridge twice, Downing came and asked him what kind of a gun he had; that he told him he didn't have any and also that he (Downing) told him that Higgins wanted to talk with him, when he went to Higgins' car, who told him to get in; that Higgins' wife was sitting in the front seat and the boy, Hector Downing, was driving; that Higgins was in the back seat and told him to get in and sit down by him and told Downing to drive up the road a piece; that Higgins told him he owned the car, that it was financed and that they were about to take it away from him (all of which statements were untrue) and that he wanted him (Mullins) to sell whisky for him, to which he replied that he didn't sell it, but worked every day; that Oliver Fultz then walked up to the car and they stopped talking, when he (Mullins) got back in his own car and drove down Beaver road towards Frenchburg, taking Oliver Fultz with him; that Higgins followed them driving thirty-five or forty miles an hour, and rushed around his car, grazing its fender as he cut across in front of it and got into the ditch; that they all got out of the car and went over to help him; that he and Fultz went on to the end of the car, but that Bishop stopped and talked with Higgins and his wife; that he didn't hear Bishop say anything wrong, but that Higgins came up with his gun and pointed it at Bishop's chest; that when Bishop cried to him not to shoot, he

lowered it and fired two times into the ground at his feet; that as Bishop ran back to their car, Higgins saw him (Mullins) standing at the back of his (Higgins') car and hollered that "the same God damn thing is coming to you" and proceeded to shoot him four times. Mullins testified that he was not drinking, but that Higgins was a drunk man if he ever saw one. Bishop corroborates Mullins' testimony as to the circumstances under which the shooting occurred, that it was unprovoked and that he had not been drinking.

However, the testimony of appellant and his witnesses and their version of the shooting are altogether contradictory of and in striking conflict with that of the commonwealth's witnesses, Granville Fultz saying that Bishop was, at the time the shooting occurred, dead drunk and stretched out on the back seat of his and Mullins' car; that such being his condition he had said nothing to either Higgins or his wife. Higgins testifies that Mullins had come up to the car where it had run into the ditch and had stopped; that he (Higgins) was sitting under the wheel, with his wife next him; that Mullins stopped on the side of the car next where his wife sat and made "insulting passes" at her, familiarly putting his hands on her person and trying "to date her"; that he reached in the car and said he was going to kiss her, laid his hand twice on her leg and tried to run it up under her dress; that she told him to quit and he (Higgins) told him "You heard what she said," to which Mullins replied, "It is none of your damn business," when his wife told him that Mullins was getting his gun; that Mullins had his hand under his coat when he pulled his pistol and shot twice in the ground and when that didn't stop him, he shot him in the arm; that Bishop was half way between the witness' car and their car; that when he (Higgins) got out of the car, Mullins started running, when he shot twice in Mullins' direction; that the two cars were forty or fifty yards apart; that when he shot at Mullins, the latter had his hand under his coat; that when "he started out with his hand" he (Higgins) shot him through the arm and that then Mullins turned and ran back to his car and the trouble ended.

Higgins says he thinks Mullins was drunk, though his wife testifies that she couldn't say whether he was drinking or not.

The wife's account of Mullins' treatment of her in the presence of her husband is substantially the same as that of appellant. She testified that "He (Mullins) came around to the car where I was at. He put his arm on the car and commenced talking to me. He wanted a date. I told him that I was married. He said that didn't make any difference. I said, 'It does with me.' He acted like he was going to kiss me. He put his hand on my knee. I pushed it back. He put his hand on my knee again. I did the same thing. He put his hand up my dress. I told him to get away and leave me alone. He said he didn't have to. My husband said, 'You heard what she said.' He said, 'Yes, by God, maybe you want to do something about it.' My husband got out of the car" and went around it, towards where Mullins was standing; that Mullins started towards her husband, when he fired at Mullins. Notwithstanding her intimate account given of the shooting, she testified she didn't know how close they were to each other at the time of the shooting and didn't even remember whether she saw Mullins at the time he was shot or his hands or anything about him, nor could she tell from Mullins' conversation or appearance whether or not he was then under the influence of liquor.

Counsel for defendant then read in evidence the affidavit of the witness, Hector Downing, which was to the effect that at the time Higgins shot Mullins, the latter was in pursuit of Higgins and that Mullins "was making an attempt as if to withdraw a weapon from under his coat and was making toward" Higgins "in a threatening attitude" when Higgins fired at Mullins; that up to that time Higgins had made no effort to fire a shot or do anything to Mullins.

We have felt it needful to relate with considerable detail the conflicting evidence of the parties, because of its singular character and also the nature of the grounds here urged for reversal, which are as follows:

(1) The verdict is not sustained by the evidence.

(2) The lower court erred to the material prejudice of the appellant in not sustaining the motion and grounds for a new trial.

(3) This is a felony case, and the verdict was rendered by a jury of less than twelve. One of the jurors was deaf and not qualified to sit as such in the trial.

(4)    The lower court had authority to correct the error when the fact that the juror was not qualified was brought to its attention and should have done so, notwithstanding Section 273, Criminal Code of Practice.

(5)    The purported judgment is insufficient, in fact, not a judgment at all, but it, for the sake of protecting appellant's rights by appeal only, must be treated as a judgment or such order as authorized the appeal.

As to the first of these objections, it is apparent from the recital of the testimony of the commonwealth's witness, giving in such detail the conduct of appellant upon this occasion, both prior to and at the time of the shooting, that it tends to show that Higgins was in no way provoked by the prosecuting witness, Mullins, and that no indignities were offered by him to Higgins' wife. Whatever our views or however we may appraise the credibility of the evidence so given, as that matter rests within the sole province of the jury (which here found that it was sufficient to support their verdict), we are without authority to disturb their verdict where not flagrantly against the evidence.

Counsel for appellant insists that the commonwealth's version of this shooting sounded improbable and unreasonable and that the court should have accepted only the defendant's testimony, which it is claimed showed clearly that appellant was only acting in the protection of his wife and the defense of his home, in repelling by shooting the sinister and insulting attack Mullins was making upon his wife in his presence, which was well calculated to enrage him.

We do not attempt to state what would have been the jury's reaction to appellant's account of the shooting had they believed it to be true, but it is apparent from their verdict rendered that they did not believe the testimony of either the defendant or his wife. However, it is not within our right or power to pass on the credibility of the evidence, but only where there is no substantial and probative evidence to sustain the jury's verdict are we empowered to set it aside. Such is clearly their province, as the jury sees and hears the witnesses and can much better judge of the credibility of their evidence than we from a bare reading of the report of it, and even were they not in a better position to judge the credibility of the evidence than we, the right is yet wise-

ly given them, not us, to determine the truth upon the factual issues joined by the evidence, and we are not authorized to question such right where their finding is supported by any evidence of substance and probative force. We, therefore, are of the opinion that this first contention of appellant's must be dismissed as being without merit.

It is further our conclusion that we cannot concur with appellant as to the merit of his second assignment urged for reversal, that the lower court erred in not granting a new trial on the ground that one of the members of the jury who sat upon his trial was deaf and thus was not qualified to sit.

Upon this point the record is that after the jury was sworn, the evidence heard and its verdict returned, appellant filed motion and grounds for a new trial, which did not embrace the ground here urged for our consideration as an amended motion and ground, which was overruled, a new trial denied and an appeal granted, with right given to the first day of the next regular June term of court in which to prepare and file his bill of exceptions; further, that appellant did accordingly on the first day of the June term tender and offer to file his bill of exceptions, containing his original motion and grounds for a new trial, which was ordered filed and did further upon the same day tender and ask to be filed his amended motion and grounds for a new trial, which was supported by the affidavit of a member of the jury who had sat upon the former trial, and also tendered his amended bill of exceptions having relation to his amended motion and grounds, which he moved to have filed, which motion to file the court overruled over the defendant's objection and exception thereto, and prayed an appeal, which was granted.

However, defendant was permitted to tender said amended motion and grounds, so as to make them a part of the record.

The amended motion and grounds for a new trial offered by appellant at the June term of the court, as hereinabove stated, recited that the appellant, by reason of the juror Goodpaster being physically disqualified to serve on the jury, did not have a jury of twelve qualified jurors to try his case, as required by law, and that for such reason no trial was given him upon the charge

for which he was found guilty; further, that Lee Goodpaster was a member of the trial jury and possessed such physical defect of hearing that he could not and did not hear the testimony of the witnesses and for that reason was not a qualified juror and that the verdict against appellant is a verdict of eleven men instead of twelve duly qualified jurors.

The supporting affidavit of Goodpaster states that he was one of the jurors in the trial of the case at the previous March term of the Menifee circuit court; further, that he has a physical defect and is unable to hear unless the words used are extremely loud and that in the trial of this case he could not and did not hear the testimony and was unable to give a full consideration to all of the testimony of the case, "in fact, not very much of it," and except as advised by his fellow jurors was unaware of all the testimony given for the trial.

It may readily be conceded that the defect of deafness suffered by the affiant juror is such a physical disqualification for service upon the jury that had he upon his voir dire examination been challenged for cause therefor, but without discovery of his disqualification, the same would have to be sustained. However, the question is here as to whether this amended motion and grounds were timely urged and also could such ground, of a juror's disqualification, be presented to the court upon the affidavit of a member of the jury who joined in returning a verdict against him upon his former trial.

Section 273, Criminal Code of Practice, provides that:

"The application for a new trial must be made at the same term at which the verdict is rendered, unless the judgment be postponed to another term, in which case it may be made at any time before judgment."

Further, by Section 272, Criminal Code of Practice, it is prescribed that:

"A juror can not be examined to establish a ground for a new trial, except it be to establish that the verdict was made by lot."

So was it held in Mills v. Commonwealth, 223 Ky. 165, 3 S. W. (2d) 183; Lassiter v. Commonwealth, 249 Ky. 352, 60 S. W. (2d) 937; Allen v. Commonwealth, 234 Ky. 302, 28 S. W. (2d) 19.

Further as to the qualifications of a juror, it is provided by Section 2253, Kentucky Statutes, that:

"No person shall be a competent juryman for the trial of criminal, penal or civil cases in any court unless he be a citizen, at least twenty-one years of age, a housekeeper, sober, temperate, discreet and of good demeanor. * * * But the fact that a person not competent served on a jury shall not be cause for setting the verdict aside, nor shall exceptions be taken to any juror *for such cause after the jury has been sworn.*" Italics ours.

See Combs v. Commonwealth, 97 Ky. 24, 29 S. W. 734; Horton v. Commonwealth, 254 Ky. 443, 71 S. W. (2d) 984.

And so, as said in Section 119, page 647, 31 Am. Jur.:

"The general rule is that objection to a juror because of his disqualification is waived by a failure to object to such juror until after verdict, whether in a civil or a criminal case, and even with respect to a statutory qualification. Even in a capital case the disqualification of a juror is generally unavailable after verdict. * * * In some cases a waiver of the objection to a juror results from failure to raise it before verdict, even though the cause of objection does not become known until after verdict. (State v. Pickett, 103 Iowa 714, 73 N. W. 346, 39 L. R. A. 302.)"

As against this, however, as said in the above-cited section of 31 Am. Jur., page 648:

"It has been ruled that objections not known or to be anticipated are not waived by failure to ask the juror about them. At least the question calls for an exercise of discretion on the part of the trial judge as to whether the losing party has been prejudiced by the disqualification of the juror. (Seaton v. State, 109 Neb. 828, 192 N. W. 501; State v. Patrick, 180 Wash. 56, 39 P. (2d) 390.) No waiver results where the juror is examined on his voir dire and gives false answers to questions touching his qualifications, or where the juror knows facts which he should, but does not, disclose in answer to questions asked him."

See also Robert Anderson v. State of Arizona, reported in 54 Ariz. 387, 96 P. (2d) 281, 126 A. L. R. 501, discussing the question here considered and the annotation thereto beginning at page 506.

A further discussion of this question as to waiver of right to a new trial may be found in 23 C. J. S., Criminal Law, Sections 1425, 1426 and 1427, pages 1123 to 1125, inclusive.

See also 18 Ky. Law Journal, page 272, on the subject of jury selections in Kentucky.

Without committing ourselves or taking any position upon the merit of such ruling, it is enough to here say that not only has appellant failed to show that he exercised reasonable diligence upon a voir dire examination of the jury to discover the claimed physical disqualification of this or any juror, by reason of his deafness or other physical defect, to serve upon the jury, but, conceding arguendo that had such showing been properly made it would have received the favorable consideration of the court, it was here not properly presented to the court for the reason that such physical defect of the juror, by reason of his being deaf and unable to hear the testimony given by the witnesses, was presented and based entirely upon the supporting affidavit of the juror himself, in violation of Section 272, Criminal Code of Practice, set out supra, expressly providing that a juror cannot be examined to establish a ground for a new trial, except it be to establish that the verdict was made by lot.

We are therefore led to conclude that neither of the errors assigned for reversal, that the verdict was not sustained by the evidence or that plaintiff was entitled to a new trial because of the physical disqualification of deafness of the named juror, is (for the reasons above stated) meritorious and therefore that the trial court properly denied appellant a new trial upon either of the grounds urged therefor. Judgment affirmed.