Lindon PELFREY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 92–SC–36–DG.

Supreme Court of Kentucky.

Oct. 22, 1992.

Rehearing Denied Jan. 21, 1993.

Grover A. Carrington, White, Peck & Carrington, Mt. Sterling, for appellant.

Chris Gorman, Atty. Gen., Michael L. Harned, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

Lindon Pelfrey appeals his conviction of first-degree manslaughter for which he received a ten-year prison sentence. We granted review in this case to determine whether the Sixth Amendment to the Federal Constitution and Section Eleven of our State Constitution were violated when a criminal defendant was tried by a jury which included jurors who had previously tried and convicted a confederate. The Court of Appeals, in a unanimous decision, found no such violation. We agree, and affirm.

On June 6, 1990, Pelfrey and his friend, Clayton Wise, were playing pool at Route 11 Liquors in Mount Sterling, Kentucky. While there, Pelfrey played pool with James Baker, for money. Pelfrey and James Baker began to argue over the terms of the bet after playing the final game. Pelfrey then pulled out his pistol and threatened James Baker. James Baker's brother, Ronnie, tried to take the pistol from him, causing the weapon to discharge. Pelfrey and Ronnie Baker scuffled and fell to the floor. Two more shots were fired, one mortally wounding Ronnie Baker in the head. After the shooting, Pelfrey handed the pistol to Wise as both men ran from the bar. As they reached the parking lot adjacent to the bar, a truck pulled into the lot. Wise approached the driver of the truck and pointed the pistol at the driver's head, demanding that they be provided transportation to Powell County. The police then arrived and arrested Pelfrey and Wise before they could escape.

Pelfrey was indicted for murder while Wise was separately indicted for first-degree wanton endangerment for the parking lot incident. The Commonwealth chose to try Wise and Pelfrey separately, with Wise being tried first, on September 25, 1990. Wise did not take the stand in his own defense nor did he present any evidence. The jury found Wise guilty of first-degree wanton endangerment, for which he received a three-year sentence.

Pelfrey's trial was set for October 23, 1990. Prior thereto, his defense counsel made a motion for a continuance until a new jury panel was available. The trial court denied the motion. Twenty-one of the twenty-five jurors drawn in the Wise case were selected as potential jurors in the appellant's trial. Four of the jurors who sat on the panel which had convicted Wise were impaneled as jurors for Pelfrey's trial. Defense counsel did not challenge for cause any of these four jurors nor any of the other jurors who were impaneled. The trial judge admonished the jury to consider against Pelfrey only what they heard from the witness stand.

■ Appellant argues that the trial court erred when it overruled his pretrial motion for a continuance until a new jury panel was available. The basis for this motion is the fact that this same panel convicted appellant's companion one month earlier of an offense closely associated with appellant's charge. He further maintains that his continuance motion relieved him of his affirmative duty during voir dire to challenge jurors that he believed would be unable to render a fair and impartial verdict based on the evidence. In essence, appellant asserts that his motion to continue served as an ongoing objection to all the jurors during voir dire examination. We disagree with both of these contentions.

■ A continuance motion is a general motion, and "a trial court has broad discretion in granting or refusing to grant a continuance and that ruling will not be disturbed absent an abuse of discretion." *Walker v. Farmer*, Ky., 428 S.W.2d 26, 28 (1968). Here, the trial judge concluded, and we concur with his and the Court of Appeals' reasoning, that there were adequate safeguards in place to assure an unbiased jury. Our Rules of Criminal Procedure provide for the examination of jurors on voir dire to determine bias and impartiality. RCr 9.30. When there is reasonable ground to believe that a prospec-

tive juror cannot render a fair and impartial verdict on the evidence, that juror is to be excused as not qualified. RCr 9.36. Further, jurors may be dismissed on peremptory challenges. RCr 9.40.

The record indicates that defense counsel conducted a thorough examination of the jurors on voir dire and accepted this panel without challenging any of the jurors who had been previously impaneled in the Wise trial, including the four jurors who had actually sat on the Wise trial. Further, the trial judge admonished the jury that the Wise event happened after the shooting and did not concern the guilt or innocence of Pelfrey in any way whatsoever. We conclude, since voir dire did not produce any evidence which prompted the appellant to challenge a juror for cause, and the trial judge admonished the jury, that the trial court's denial of appellant's earlier motion to impanel a new jury was not an abuse of discretion.

■ Next, we will address the question of whether appellant's failure to challenge any of the potential jurors for cause was a waiver of his right to raise the issue on appeal, claiming bias or partiality of certain jurors.

■ The rule is well settled that a challenge to a juror for cause must be made before the trial. *Galliaer v. Southern Harlan Coal Co.,* 247 Ky. 752, 57 S.W.2d 645 (1933). The general rule is that objection to a juror because of his disqualification is waived by a failure to object to such juror until after verdict. *Higgins v. Commonwealth,* 287 Ky. 767, 155 S.W.2d 209 (1941) (quoting 31 Am.Jur. § 119, p. 647) and also see 47 Am.Jur.2d Jury § 219, p. 808 (1969). The trial lawyer has a specific procedure to follow when he believes a juror is biased. RCr 9.36(1) provides that "challenges for cause shall be made first by the Commonwealth and then by the defense." Here, since the appellant did not challenge any of the jurors, we can only assume that he was satisfied with the jury. Contrary to trial counsel's argument, a continuance motion for a new panel is not the equivalent of individually challenging jurors for cause. Once trial counsel's gener-

al motion was denied, his method for reviewing the bias issue was to specifically challenge jurors. Without doing so, counsel clearly waived his jury challenge.

Appellant relies on *Montgomery v. Commonwealth,* Ky., 819 S.W.2d 713 (1991), to support his argument that the four jurors who sat on both petit juries had an implied bias even though each juror answered in the affirmative that he or she could put aside any personal knowledge about the appellant's case and judge him solely on the evidence heard at trial. However, *Montgomery* is distinguishable on its facts because *Montgomery* dealt with the trial judge's failure to grant a defendant's challenge of a juror for cause. Here, there was no challenge of any juror for cause and, therefore, this case does not reach the "magic question" issue that *Montgomery* addressed.

The decision of the Court of Appeals and the Judgment and Sentence of the Montgomery Circuit Court are affirmed.

STEPHENS, C.J., and REYNOLDS and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which COMBS and LAMBERT, JJ., join.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

We have avoided confronting the compelling evidence that this jury was necessarily biased because of the incriminating evidence presented at the prior trial of the appellant's confederate, by asserting that the appellant failed to seek relief by an appropriate method. The essence of the Majority Opinion is that when this appellant's motion for a continuance was overruled, he erred fatally in failing to then attempt to challenge for cause the jurors tainted by the evidence against him from the prior trial. We state:

"Here, since the appellant did not challenge any of the jurors, we can only assume that he was satisfied with the jury."

Such an assumption is mistaken.

The facts are that twenty-one of the twenty-five jurors drawn in the confederate's case were seated as potential jurors in the appellant's case. Ten of those jurors responded on voir dire that they had previous knowledge of the appellant's case from the trial of the confederate's case. Four of the jurors who convicted the confederate were seated as jurors in the appellant's case. Prior to trial the appellant moved for a continuance arguing that he was entitled to be tried by a separate jury panel because the jury panel would be severely prejudiced against him since nearly all of the prospective jurors had already heard unrebutted evidence of his activities during the prior trial. To deny this motion was an abuse of discretion. A short continuance until the next jury was impaneled was in order, and failure to grant this continuance should be viewed as intolerable. The presenting situation is of a defendant who has been denied the right to be tried by an impartial and unbiased jury, a right guaranteed by both the Sixth Amendment of the United States Constitution and by Section 11 of the Kentucky Constitution.

Further challenge to the tainted jurors during the voir dire procedure would have been an exercise in futility because the judge "cleansed" the tainted jurors by extracting from them affirmative answers to the "magic question." He asked, could they put aside their previous knowledge and decide this case solely on the basis of the evidence presented at this trial. To expect them to put aside their previous knowledge, is to deny human nature. Opinion once formed can hardly be entirely erased, regardless of a conscientious effort they might undertake to do so.

*Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713 (1991), wherein we applied the principle of implied bias in a similar situation, is distinguished in the Majority Opinion "on its facts because *Montgomery* dealt with the trial judge's failure to grant a defendant's challenge of a juror for cause," rather than because of failure to grant a continuance. It is, quite obviously, a distinction without a difference.

The Commonwealth's principal argument was:

"... any evidence concerning appellant heard at [the confederate's] trial by these jurors was merely cumulative to the evidence adduced at appellant's trial. The four jurors heard nothing concerning appellant at the [confederate's] trial that was not also stated at appellant's trial."

This is a shocking notion of a fair trial. My colleagues should reject it out of hand.

COMBS and LAMBERT, JJ., join this dissent.