# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED:  DECEMBER 19, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2023-SC-0548-MR

ALFREDO MARTINEZ          APPELLANT

V.
ON APPEAL FROM BOONE CIRCUIT COURT
HONORABLE JAMES R. SCHRAND, II, JUDGE
NO. 22-CR-00750

COMMONWEALTH OF KENTUCKY          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Alfredo Martinez was convicted by a Boone Circuit Court jury of three counts each of incest, rape in the first degree, and sodomy in the first degree. He received a sentence of life imprisonment and now appeals as a matter of right.[1]  Following a careful review, we affirm.

The victim, S.M.,[2] is the biological daughter of L.M. and Martinez.  She lived with her mother but would visit Martinez and his family at his home in Hebron, Kentucky.  When she was between 10 and 11 years old, she was sleeping on a pull-out trundle bed while her younger biological sister, M.M., was asleep on the top bed.  S.M. awakened to find Martinez's mouth on her

---

[1]  KY. CONST. §110(2)(b).

[2]  We use initials to protect the privacy of this minor individual.  *See* Kentucky Rules of Appellate Procedure (RAP) 31(B).

vagina. He then got on top of her and placed his penis in her vagina. She recalled wearing a Disney princess nightgown and said she did not fight back or call for help because she did not think anyone would believe her.

On another occasion, she was asleep on the lower trundle bed, but her younger sister was not on the top bed. Everyone in the house was asleep but, as before, she awoke to Martinez putting his mouth on her vagina. He again placed his penis inside her vagina. Martinez asked S.M. if she liked it and she said no and told him to stop.

On a third occasion, S.M. and M.M. had been playing in the basement. Martinez came downstairs when M.M. went upstairs. He prevented S.M. from leaving the basement, made her lie down on the couch, and remove her pants and underwear. He got on top of her and placed his penis inside her vagina. He asked her questions such as "do you like it?" and "is it mine?" while he was vaginally penetrating her. She told him no and asked him to stop. He continued for a little while longer before suddenly stopping. After he got up there was a wet spot on the couch he wiped up with a tissue.

As she grew older, Martinez would text S.M. and pick her up from her mother's home in Covington, Kentucky, under the guise of taking her to Walmart to do some shopping. He would instead take her to the dark end of a soccer field parking lot in Latonia, Kentucky, and force her to have sexual intercourse with him in the back seat of his vehicle. S.M. said this happened multiple times.

In 2022, when she was sixteen years old, S.M. became pregnant by her boyfriend. Afraid to have Martinez around her unborn daughter, she finally informed her mother of the years of sexual abuse she had been subjected to. S.M. was interviewed at the Children's Advocacy Center and she agreed to participate in a controlled call with Martinez which was recorded by the Boone County Sheriff's Office. During the call, Martinez made numerous statements which officers believed amounted to admissions of wrongdoing. He answered no when S.M. asked if he was calling her a liar when she said he "made her have sex with him." Martinez apologized a dozen times or more and, at the end of the call, offered S.M. $125 when she threatened to tell someone about the abuse.

Martinez was charged with three counts each of incest, rape in the first degree, and sodomy in the first degree. His defense at trial was a complete denial of all allegations. The jury convicted him of all of the charges and recommended a sentence of life imprisonment which the trial court subsequently imposed. This appeal followed.

Martinez raises several allegations of error in seeking reversal. First, he contends the trial court erred in denying his motion for a new trial based on alleged juror misconduct during *voir dire*. Second, Martinez argues the trial court erred in permitting the Commonwealth to elicit testimony from S.M. regarding uncharged acts of sexual abuse. Third, he alleges victim impact testimony was improperly admitted during the guilt phase. Finally, he urges reversal due to cumulative error.

Martinez first contends he was entitled to a new trial because a juror allegedly downplayed the extent of her relationship with Martinez's wife, Julie Martinez. During voir dire, Juror 351 asked to approach the bench and informed the court she had not originally recognized the name but that she knew Julie, and they were friends on Facebook. The parties undertook a lengthy and thorough questioning of Juror 351 who confirmed she knew Julie as a waitress at Chuy's restaurant but did not know her well and the two had not "hung out" together. The juror said it had been a couple of years since she had seen Julie because Julie no longer worked at the restaurant. She stated she was unaware Martinez had been charged with a crime and had not seen any social media posts regarding the case. She indicated she did not think she would believe Julie over any other witnesses and would listen to both sides while indicating the allegations made her "sick to her stomach" because she had been a juror in a similar case years before. Juror 351 affirmed she could be fair and impartial, would listen to all the details, and her knowing Julie would not impact her. Neither party moved to strike Juror 351 for cause, nor was a peremptory strike used to remove her. Ultimately, she sat on the jury.

Shortly after the trial concluded, Martinez moved for a new trial alleging, *inter alia,* the jury was not fair and impartial because Juror 351 downplayed her relationship with Julie. Attached to the motion was an affidavit from Julie asserting that besides knowing Juror 351 from Chuy's, the pair had volunteered together at an elementary school, and they would "hug and catch up" when seeing each other out in public. They had been Facebook friends

4

since 2016 but had not seen each other since Martinez was indicted. In response, the Commonwealth countered that Juror 351 had been candid during questioning and Julie's affidavit corroborated answers given during the bench conference.

The trial court denied the motion for a new trial, concluding neither side had sought to remove Juror 351 from the panel, the relationship between the two women was primarily based on contact at the restaurant where Julie formerly worked, and Juror 351 had not committed misconduct relative to disclosing her relationship with the Martinez family. Martinez disagrees with the trial court's assessment and persists in claiming Juror 351 either lied explicitly about the closeness of the relationship or, at the very least, may have lied by omission. He believes the jury was therefore so tainted as to have deprived him of a fair trial. We disagree.

"To obtain a new trial because of juror mendacity, 'a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.'" *Adkins v. Commonwealth*, 96 S.W.3d 779, 796 (Ky. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). Further, when challenging a juror based on the juror's relationship with another person, a defendant "must do more than simply speculate that the relationship might have somehow affected the jury verdict." *Sluss v. Commonwealth*, 381 S.W.3d 215, 223 (Ky. 2012). Martinez has done none of these things.

If he had a reasonable ground to believe Juror 351 could not be fair and impartial, it was incumbent on Martinez to challenge her for cause. RCr[3] 9.36(1). Had that challenge failed, Martinez would have the opportunity to exercise a peremptory strike to remove her from the panel. He did neither. It is well-settled that a challenge to a juror for cause must be made prior to the jury being sworn. *See Pelfrey v. Commonwealth,* 842 S.W.2d 524, 526 (Ky. 1992); *see also* RCr 9.36(3). Generally, "objection to a juror because of his disqualification is waived by a failure to object to such juror until after verdict." *Pelfrey,* 842 S.W.2d at 526.

Here, it was not until after he had been convicted that Martinez brought any potential bias or indication of juror impropriety to the trial court's attention. Even then, the entirety of his position was based on the unsupported affidavit of his wife which offered little information about the relationship apart from what Juror 351 had already disclosed. Although Julie indicated she was aware of the averments made in her affidavit while the trial was ongoing, Martinez offers no explanation for the delay in bringing the matter before the trial court. He further offers no proof that Juror 351 was dishonest during *voir dire,* but merely speculates she lied or omitted details about the closeness or extent of her relationship with Julie. Rank speculation is insufficient to justify the relief sought. The trial court did not err in refusing to grant Martinez a new trial on that basis.

---

[3] Kentucky Rules of Criminal Procedure.

Next, Martinez argues the trial court erred in allowing S.M. to testify about acts of sexual abuse which occurred at the Latonia soccer fields for which no criminal charges had been brought.[4]  Before trial, the Commonwealth filed a notice pursuant to KRE[5] 404(c) that it intended to introduce evidence of other uncharged sexual acts.  Martinez asserts the sole purpose of the evidence was to inflame the jury by showing he had a criminal disposition to sexually assaulting his minor daughter, and that the trial court should have therefore granted his motion to exclude it.  We disagree.

The general rule is well-established "that evidence of other crimes is not admissible to show that a defendant is a person of criminal disposition." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 333 (Ky. 2023) (citing KRE 404(a)).  However, such evidence may be admissible when offered for a purpose other than criminal predisposition "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or . . . [i]f so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party."  KRE 404(b)(1)-(2).  Trial courts are to assess the relevance, probativeness, and prejudice of the evidence of other crimes or wrongs when determining its admissibility.  *Leach v. Commonwealth*, 571 S.W.3d 550, 554 (Ky. 2019).  We review evidentiary rulings under KRE

---

[4] Latonia is located in Kenton County, Kentucky.  Martinez was indicted for these alleged acts in that county.

[5] Kentucky Rules of Evidence.

404(b) for abuse of discretion. *Gasaway*, 671 S.W.3d at 331. An abuse of discretion occurs when "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The Commonwealth sought to introduce evidence of the sexual assaults which occurred at the Latonia soccer fields to prove motive, intent, plan, knowledge, opportunity, or absence of mistake. Those acts included oral and vaginal sex between S.M. and Martinez. The trial court evaluated the proposed evidence under the three-part test articulated in *Leach* and determined it was admissible. We discern no abuse of discretion in the trial court's ruling.

"[E]vidence of similar acts perpetrated against the same victim are almost always admissible" for 404(b) purposes. *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002). Martinez put forth a defense of total denial of any illicit acts against his daughter thereby putting in issue his motive, intent, plan, knowledge, opportunity, or absence of mistake. The evidence adduced at trial revealed a common scheme whereby Martinez would isolate S.M. before orally sodomizing and vaginally raping her, thus evincing a pattern for the bad acts. Martinez articulates no basis of prejudice resulting from S.M.'s testimony recounting similar uncharged acts of rape and sodomy. The jury had been made fully aware of the sordid details of his acts of continuing abuse against S.M. We are unconvinced testimony regarding the Latonia soccer field incidents caused undue prejudice such as to require its exclusion. *See* KRE

403; *Harp v. Commonwealth*, 266 S.W.3d 813, 822-23 (Ky. 2008). The trial court acted within its discretion in permitting the testimony.

Third, Martinez contends S.M.'s mother improperly gave victim impact testimony in the guilt phase of trial. He concedes this error is unpreserved and requests palpable error review under RCr 10.26. "Under this rule, an error is reversible only if a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed nonprejudicial." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006) (quoting *Graves v. Commonwealth*, 17 S.W.3d 858, 864 (Ky. 2000)). A palpable error is "easily perceptible, plain, obvious, and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). In other words, a palpable error occurs where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Martin*, 207 S.W.3d at 4.

During her testimony, the Commonwealth asked S.M.'s mother how the abuse had impacted her daughter. In response, she stated, "Her trust in everybody is different. She doesn't trust no man. Not even her family. It's impacted a lot of us. Our whole family." Martinez claims these statements rendered his trial fundamentally unfair. Again, we disagree.

Evidence of emotional injuries to a victim is relevant and admissible to prove the fact of a sexual assault so long as the evidence pertains to "behavior or conduct that is within the understanding of ordinary personal experience[.]" *Blount v. Commonwealth*, 392 S.W.3d 393, 397 n.3 (Ky. 2013) (citing *Dickerson*

9

*v. Commonwealth*, 174 S.W.3d 451, 471-72 (Ky. 2005)).  That is to say, our decision in *Dickerson* permits the victim or a person familiar with the victim to describe observed changes in the victim's behavior following the alleged assault.  174 S.W.3d at 471-72.  Evidence of this sort is especially probative to contradict a defendant's denial that the assault occurred.  *Id.*

In *Alderson v. Commonwealth*, 670 S.W.3d 884, 893 (Ky. 2023), we held that "victim impact evidence masquerading as victim background evidence is not permissible as the 'introduction of victim impact evidence during the guilt phase is reversible error.'"  (Quoting *Tackett*, 445 S.W.3d at 33).  While the Commonwealth is certainly permitted to "introduce evidence, after a determination of guilt, relevant to the impact of the crime upon the victim, including any physical, psychological, or financial harm" pursuant to KRS 532.055(2)(a)(7), we have consistently disapproved of the use of this type of evidence when determining guilt.  *Roe v. Commonwealth*, 493 S.W.3d 814, 823 (Ky. 2015).  However, the Commonwealth is "entitled to show the jury that the victim was not a mere statistic, but a living person[.]"  *Id.* (quoting *Bennett v. Commonwealth*, 978 S.W.2d 322, 324-26 (Ky. 1998)).  "The line between relevant-background information and prejudicial-impact testimony is a narrow one; but we essentially distinguish the two forms of testimony by inquiring whether the witness was overly emotional, condemnatory, or accusatory in nature."  *Id.* at 824 (citing *Foley v. Commonwealth*, 953 S.W.2d 924, 937 (Ky. 1997)).  Another "way to determine the difference between victim impact evidence and victim background evidence is whether the evidence is 'aimed

10

primarily at appealing to the jurors' sympathies' or 'providing an understanding of the nature of the crime[.]'" *Alderson*, 670 S.W.3d at 893 (quoting *Tackett*, 445 S.W.3d at 33). The issue of whether such evidence is truly relevant in a particular case is committed to the sound discretion of the trial court. *Davis v. Commonwealth*, 620 S.W.3d 16, 29 (Ky. 2021).

After reviewing the mother's testimony, we are convinced it did not approach the line described in *Alderson* and was an even further cry from being labeled a palpable error. It was brief and straightforward, was not overly emotional, inflammatory, or calculated to garner sympathy from the jury. Rather, it was indicative of the emotional and psychological changes which occurred because of the abuse Martinez inflicted on S.M. *See* KRS 532.055(2)(a)(7). The testimony was offered as factual evidence to counter Martinez's denial that any sexual assaults ever occurred. There was no error, and certainly no palpable error.

Finally, Martinez claims his convictions should be reversed due to cumulative error. Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Cumulative error has been found "only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* (citation omitted). As we have found no individual errors, there can be no cumulative error.

For the foregoing reasons, the judgement of the Boone Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General