RENDERED: AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000690-MR

CHRISTOPHER LITTLE                                       APPELLANT

                     APPEAL FROM HARDIN CIRCUIT COURT
v.                HONORABLE KELLY MARK EASTON, JUDGE
                            ACTION NO. 18-CR-00904

COMMONWEALTH OF KENTUCKY                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

DIXON, JUDGE: Christopher Little appeals from an April 22, 2019, judgment and sentence entered by the Hardin Circuit Court finding Little guilty of two counts of second-degree burglary, one count of third-degree criminal trespass, and being a first-degree persistent felony offender (PFO I). Following review of the record, briefs, and law, we affirm.

# FACTS AND PROCEDURAL BACKGROUND

On September 1, 2018, Charles Degrella was sitting on his front porch drinking his morning coffee when he noticed a man, whom he could not identify, on a four-wheeler in his driveway. Charles went to his barn, discovered his son's four-wheeler missing, and notified law enforcement.

No new information surfaced about the incident until September 6, at which time Andrew Cleaver, upon arriving at his property located at 9241 Bardstown Road in Hardin County, noticed a man walking toward him. The man approached Cleaver and asked for gas. Cleaver instructed him to stay put and he would get the gas. However, the man kept walking toward him. Frightened because his young son was with him, Cleaver got back in his truck, locked the doors, and called police. The man fled, and as he was climbing over the fence toward Hall Road, dropped two bags.

Kentucky State Police Trooper Shea Foley responded to the call. Inside one of the bags was a shirt, cellphone accessories, a multi-tool, and a Ziploc bag with what Trooper Foley thought to be heroin (although this assumption was later disproven by lab results). The second bag contained various tools; a receipt for repairs to a car bearing the name Christopher Little and signed by his girlfriend, Amanda Little; an insurance card issued in both names; vehicle registration papers; and keys.

While looking around the Cleaver property, Trooper Foley found an abandoned four-wheeler nearby. The four-wheeler was out of gas, and there was no key in the ignition. It was later identified as the four-wheeler stolen from Degrella.

Later that afternoon, Jacob Sareyka was in his bedroom when he heard someone open the front door of the trailer he was renting at 127 Hall Road. Sareyka thought it was his cousin entering the trailer; however, he discovered Little in the kitchen standing in front of the refrigerator with a water bottle. Little said he became thirsty while working cattle and was just getting a drink. Sareyka asked Little where he thought he was because there were no cattle nearby. Little gave an incorrect address and refused to leave. Sareyka left the room to get his pistol but heard Little flee when he loaded the clip.

Sareyka subsequently contacted Ella Moore about the incident. Moore owned 150 acres of land on and around Hall Road, including the trailer where Sareyka lived. Moore drove around her property to see if she could find Little and checked multiple motion-activated trail cameras placed across her property. Two of the cameras were missing; however, one of the remaining cameras had a picture of a man carrying a water bottle going up a hill and another picture of the same man coming back down the hill carrying a trail camera. The date stamp showed the photos were taken shortly after Sareyka's encounter with

Little. One of the missing cameras was found on the adjacent property owned by Patty Edlin, and the second camera was found on property owned by Moore's brother.

The following morning, Edlin saw Little in her yard. Little asked her for some water and the use of her telephone, but Edlin did not let Little into the home. He then attempted to force his way into the house but fled when Edlin called police.

Later that same day, Stephanie Thomas noticed her door had been broken and, concerned that someone was trying to break into her home, called police. Kentucky State Police Trooper Clayton Ellis responded to the incident. He was later contacted by dispatch and advised that there had been a shooting across the road at 590 Hall Road. Deputy Brandon Boone of Fish and Wildlife also responded to the call.

Billy and Barbara Hall were the residents of 590 Hall Road. Barbara had heard reports of a man seen in the area and was shocked to find the stranger on her front porch. She locked the door behind her and ran to get her husband. By the time Billy retrieved his shotgun, Little had broken into the kitchen. Billy fired two shots at Little: the first stunned him and the second stopped him from getting further into the house. Upon Trooper Ellis's arrival, Little was placed under arrest and airlifted to a hospital for medical treatment as a result of the gunshot wounds.

Little was indicted on several charges, including third-degree criminal trespass,[1] possession of drug paraphernalia,[2] first-degree possession of a controlled substance,[3] three counts of second-degree burglary,[4] receipt of stolen property greater than $500,[5] and being a persistent felony offender in the first degree.[6] The drug-related charges were dropped after the substance found in the bags on Cleaver's property was determined not to be heroin.

The trial commenced on February 25, 2019. During the first day of trial, the jury asked Trooper Foley if the four-wheeler key found on Cleaver's property was ever inserted in the ignition to see if it would start the four-wheeler. It was determined the key had not been tried in the ignition. Cleaver had found the key and given it to Trooper Ellis who had placed it in the center console of his cruiser; however, the key had never been placed into evidence, nor was the Commonwealth advised of its existence. The court tasked the attorneys with briefing the issue and asked the Commonwealth to determine if the key fit the

---

[1]  Kentucky Revised Statutes (KRS) 511.080, a violation.

[2]  KRS 218A.500(2), a Class A misdemeanor.

[3]  KRS 218A.1415, a Class D felony.

[4]  KRS 511.030, a Class C felony.

[5]  KRS 514.110, a Class D felony.

[6]  KRS 532.080(3).

recovered four-wheeler. Defense counsel objected, arguing that it had not been tested before the discovery deadline and to do so at trial was a violation of the court's discovery orders.

Later that evening, however, Trooper Ellis, pursuant to the court's directive, tested the key on the four-wheeler and found that it did indeed fit the ignition. The following morning the court permitted introduction of this evidence—a ruling made, however, under the false impression that both parties had been provided access to the key. As a result of the court's ruling, Trooper Ellis was permitted to testify regarding the circumstances of finding the key and how he had come into possession of it. During the questioning of Trooper Ellis, defense counsel neither objected to this testimony nor sought a mistrial or continuance.

At the close of trial, Little was convicted by the jury of two counts of second-degree burglary, and third-degree criminal trespass. However, he was acquitted of receiving stolen property greater than $500 related to the theft of the four-wheeler, as well as one count of burglary. Little was sentenced to five years' and seven and one-half years' imprisonment, respectively, on the two burglary charges, but his sentence was enhanced to 10 and 15 years' imprisonment, respectively, because he was found to be a persistent felony offender in the first degree, to be served concurrently. Little now appeals his conviction to this Court as a matter of right.

Little's sole contention is that the trial court erred in admitting evidence that the key produced by Trooper Ellis fit the four-wheeler stolen from Degrella. He maintains this error constituted a violation of the court's discovery order meriting reversal of his conviction.

## STANDARD OF REVIEW

We review a trial court's evidentiary rulings for an abuse of discretion. *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004). The trial court has abused its discretion if its decision was "arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Id.* We will set aside a conviction for a discovery violation only if there exists a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Weaver v. Commonwealth*, 955 S.W.2d 722, 725 (Ky. 1997).

Discovery in criminal matters is governed by RCr[7] 7.24(1)-(2). The trial court's discovery order herein was copied verbatim from RCr 7.24, stating:

> [T]he following information shall be provided no later than thirty days after arraignment or written Notice of Entry of Appearance by defense counsel, whichever is later.
>
> (1) Upon written request by the defense, the attorney for the Commonwealth **shall** disclose . . . (b) **results** or **reports** of physical or mental examinations, and of scientific tests or **experiments made in connection with the particular case**, or copies thereof, that are known by

---

[7] Kentucky Rules of Criminal Procedure.

the attorney for the Commonwealth to be in the possession, custody or control of the Commonwealth,

>  (2) ***On motion of a defendant the court may order the attorney for the Commonwealth to permit the defendant to inspect and copy or photograph*** *. . . **tangible objects***, or copies or portions thereof, that are in the possession, custody or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of the defense and that the request is reasonable.

(Emphasis added.) The goal of RCr 7.24 is to avoid, "[a] cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused[,]" *James v. Commonwealth*, 482 S.W.2d 92, 94 (Ky. 1972), and "[it] ensures that the defendant's counsel is capable of putting on an effective defense[.]" *Chestnut v. Commonwealth*, 250 S.W.3d 288, 297 (Ky. 2008).

In its discovery order, the trial court required the Commonwealth to comply with this rule. It is clear that the failure of Trooper Ellis to place the key into evidence and then testing it during trial violated this order. It is irrelevant that the prosecutor was unaware of the key since "[i]n such circumstances the knowledge of the detective is the knowledge of the Commonwealth." *Anderson v. Commonwealth*, 864 S.W.2d 909, 912 (Ky. 1993). Nevertheless, the Commonwealth argues that this error is harmless in that Little was not convicted of any charge relating to the stolen four-wheeler. We agree.

Little claims evidence regarding the key tainted the jury's view of him, making him look not only like a burglar but also a thief. "[O]utrageous government conduct could taint evidence irrevocably, or prejudice a defendant's case on the merits." *Commonwealth v. Grider*, 390 S.W.3d 803, 818 (Ky. App. 2012) (quoting *Gibson v. Commonwealth*, 291 S.W.3d 686, 690-91 (Ky. 2009)). However, Little's argument in this regard rings hollow because, as the Commonwealth points out, he was acquitted by the jury of the only charge related to the theft of the four-wheeler.

To determine whether an error is harmless, the Supreme Court has held that "a discovery violation serves as sufficient justification for setting aside a conviction when there is a reasonable probability that if the evidence were disclosed the result would have been different." *Chestnut*, 250 S.W.3d at 297. Herein, however, the Commonwealth presented sufficient evidence to support its case on the remaining charges as borne out by the facts recounted *supra*. Thus, any error regarding the admission of evidence related to the four-wheeler key was harmless.

Therefore, and for the foregoing reasons, Little's sentence of conviction by the Hardin Circuit Court is hereby AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Karen Shuff Maurer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky