**M. N. ALEXANDER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 13, 1970.

Joseph S. Freeland, Paducah, for appellant.

John B. Breckinridge, Atty. Gen., Frankfort, John B. Browning, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

A jury found M. N. Alexander guilty of storehouse breaking and fixed his punishment at confinement in the penitentiary for one year, the minimum penalty provided. KRS 433.190. Alexander appeals, asserting that (1) the court erred in permitting evidence tending to show that appellant had committed other offenses, and (2) the court erred in rejecting evidence offered for appellant.

Sometime on the night of April 8, 1968, someone broke into the storehouse of Benton Radio Service Center and stole six television sets and some other merchandise. On April 10 three of the stolen television sets were found at appellant's place of business (television repair and pawn shop) in Paducah. There was other evidence incriminating appellant. He concedes that the evidence against him was sufficient to sustain the conviction. It is appropriate to note that appellant presented evidence which would have warranted an acquittal if the jury had chosen to be persuaded by it.

Witnesses for the Commonwealth were permitted to testify that they had found a "3–M" music machine and a camera in appellant's possession, and both of the ar-

ticles were stolen property. The "3–M" machine had been stolen in 1967 from a pizza parlor in Paducah; the camera had been taken from the office of the Board of Education of Paducah in February 1968. There was no contention made that any similarity of *modus operandi* or anything else suggested that the three crimes were related.

Appellant made timely objections to the introduction of evidence concerning the stolen "3–M" machine and the camera. The trial court overruled the objections but gave admonitions and an instruction to the jury regarding the testimony. The first of the admonitions was thus stated:

> "Ladies and gentlemen, it will be included in your instructions, but the only purpose of permitting testimony of this sort as to other items that may or may not have been in the possession of the defendant that were of stolen character, is solely for the purpose of showing motive or guilty knowledge of the crime involved and not of the specific crime with which he is charged in this indictment. This will be covered in your instructions, but at this time, I want to admonish you that this is the only basis whereby the testimony can be admitted."

The court reiterated the admonition in substantially the same language on two other occasions during the trial and incorporated the substance of it in written Instruction No. III. In Instruction No. III, after reciting that the evidence concerning the "3–M" machine and the camera must not be considered by the jury as evidence of Alexander's guilt of the substantive charge on trial, the court concluded the instruction:

> "* * * and the jury must not consider such evidence for any purpose whatsoever except the jury may consider such evidence only to show or tend to show, if it does so in the judgment of the jury, his identity with or motive and knowledge of the crime for which he is being tried."

It was shown that appellant had been in the Benton Radio Service Center a few weeks before the break-in and had effected a swap of a tape deck for a "3–M" machine. It was agreed at that time that appellant would deliver the "3–M" machine later and at his convenience. It had not been delivered to the Benton store at the time of the break-in. The store owners told the investigating officers about that transaction the day after the break-in, and pursuant to the advice of the officers, arrangements were made to pick up the "3–M" machine from the appellant, which was done. An owner of the Benton store, in telling of the occasion when appellant made the swap just mentioned, gave evidence from which it could be inferred that the appellant was looking over the store with sinister purpose. Stated in the vernacular, the evidence tended to show that appellant was "casing the joint." Based upon that circumstance, the Commonwealth contends that it was proper to receive evidence concerning the "3–M" machine even though it related to a separate crime. We are not able to accept that contention.

It is well settled that as a general rule evidence of other crimes committed by a defendant is incompetent. See Bell v. Commonwealth, Ky., 404 S.W.2d 462; Scamahorne v. Commonwealth, Ky., 357 S.W.2d 30; Turpin v. Commonwealth, Ky., 352 S.W.2d 66; and cases of like import collated in 6 Kentucky Digest, Criminal Law, ☜No. 369(1). There are well-recognized exceptions to the general rule. See Schweinefuss v. Commonwealth, Ky., 395 S.W.2d 370; McGill v. Commonwealth, Ky., 365 S.W.2d 470; Johnson v. Commonwealth, Ky., 431 S.W.2d 857; and the cases there cited. In our view the evidence concerning the stolen "3–M" machine and the camera does not fall within any of the recognized exceptions to the general rule against receiving evidence of other crimes against an accused. The account of the trade made a few weeks before the break-in could have been related without disclosing that the "3–M" machine involved in it was

stolen merchandise. The Commonwealth does not even suggest that the evidence concerning the stolen camera could fall within any recognized exception to the general rule. Rather, the Commonwealth urges that appellant fails to show prejudice since the evidence was ample to support the conviction and he received the minimum sentence. In view of the well-established rule against admitting evidence of other crimes, we may not indulge in speculation as to whether prejudice occurred as the result of the court's improperly admitting the evidence. It is patent that the only effect of the evidence was adverse to the appellant, not helpful. The fact that the jury fixed the minimum penalty may indicate the jury's lack of firm belief of the guilt of the accused. Whether so or not, the appellant was entitled to have the jury's determination of his guilt or innocence, as well as the extent of his punishment, free from extraneous references to other unrelated criminal activity. It is appropriate to note that the prosecution presented the objectionable evidence in chief and before any evidence in behalf of the appellant was introduced. It is also fair to say that the appellant disclaimed guilty knowledge of the stolen character of the "3–M" machine and the camera.

The admonitions and the instruction given by the court, although purporting to limit the effect of the evidence, did not cure the prejudicial effect of admitting the evidence. The court told the jury that it could consider the evidence solely for the purpose of showing "his identity with or motive and knowledge of the crime for which he is being tried." The evidence had no relevance to any of those things; hence, the admonition served no purpose and the admission of the evidence was prejudicially erroneous. The evidence may have had relevance if appellant was being tried as a known "fence," but not as to the charge of storehouse breaking.

■ There is no merit in the appellant's contention that the court improperly rejected evidence offered by him. The question arose in this manner: A detective of the state police was asked on cross-examination whether he had testified before the grand jury to the effect that he had no proof that appellant had broken into the store and that in his opinion he had not done so. The court sustained the Commonwealth's objection to that question, whereupon the detective's testimony before the grand jury was put into the record by avowal as follows: "I have no proof that Alexander broke in. My personal private opinion is that he didn't. All the boys that normally steal these things know that he buys them and they know where to take them." The proffered evidence was not contradictory of anything to which the witness had testified at the trial. Obviously, the "personal private opinion" of the witness as to whether Alexander did or did not break into the store had no place in the record. The determination of that fact was the ultimate issue for the jury.

■ When the sheriff of Marshall County was testifying, he was asked on cross-examination whether he had testified before the grand jury that he knew who had stolen the television sets but could not prove it. When the court sustained the Commonwealth's objection to that question, the following excerpt from the sheriff's testimony before the grand jury was placed in the record by avowal: "I know who came up here and got the sets, but I can't prove it. But I know. I have their names, but I can't prove it. He hired them to do it. Alexander has got that reputation, of course." The sheriff had not given testimony indicating that appellant had committed the break-in. It seems plain that the sheriff was expressing his own conclusion as to the actual participants in the break-in. He was careful to note that he had no proof supporting that conclusion. His deduction or conjecture as to the names of individuals he regarded as suspects was nothing more than the "work product" of his investigative activity. It was not relevant to any issue before the jury, nor was

it within the scope of any legitimate discovery processes available to the accused.

The judgment is reversed for further proceedings consistent with the opinion.

All concur.