**James Clayton WOODARD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2003–SC–0032–TG.

Supreme Court of Kentucky.

Oct. 21, 2004.

---

Misty Jenine Dugger, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Anitria M. Alo, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

Appellant, James Woodard, was convicted of second-degree assault and of being a persistent felony offender in the second degree. Appellant was sentenced to twenty years imprisonment. This appeal is as a matter of right.[1] Appellant assigns the following errors: (1) the trial court erred in admitting testimony of his name change, use of various aliases, and instances of unrelated criminal acts; (2) the trial court erred by not granting a mistrial following the testimony of a police witness that Michelle Riggs seemed to be protecting Appellant; (3) the trial court erred for failing to strike for cause a deaf juror; and (4) the trial court erred by not granting Appellant's motion for directed verdict. We discern no errors warranting reversal and affirm the conviction.

In the early morning hours of November 19, 2000, Appellant and a woman by the name of Michelle Riggs were patrons at a bar in Louisville. During the course of the evening, an argument ensued between Appellant and two other patrons, Kenneth Hardin and Joe Proctor. After the argument Appellant and Riggs left the bar, but returned a short time later. Upon returning, the pair walked through the bar, from back to front, and then exited. Approximately thirty minutes later a man entered alone with a handgun and fired several rounds, hitting Proctor in the abdomen and Hardin in the leg. The gunman immediately fled the scene. Appellant was later identified as the shooter by Hardin in a police photo lineup.

Although not specifically relevant to the crime, but nonetheless relevant to this opinion, is the matter of Appellant's name. Appellant was born James Summit. At some point prior to 1996, Appellant took the alias of James Woodard. On December 9, 1996, a man known as James Woodard legally changed his name to Bo Clark.

---

1. Ky. Const. § 110(2)(b).

Appellant pled not guilty to charges of first-degree wanton endangerment, two (2) counts of first-degree assault, and of being a persistent felony offender. He was subsequently convicted of all charges except wanton endangerment and was sentenced to twenty (20) years. Appellant contends that the trial court committed reversible error upon the grounds set forth hereinabove.

Appellant's first argument is that the trial court erred with respect to three separate evidentiary issues involving prior bad acts. The acts were admitted into evidence through the testimony of three police officers. The first alleged instance of error involves the testimony of Officer Hellinger who testified that on November 22, 2000 (three days after the bar shooting), he served an unrelated arrest warrant on James Woodard at an apartment in Louisville. A blonde female answered the door and told him that no one by the name of James Woodard was there. The woman said that her friend, Bo, was in the shower. Appellant (the man in the shower) then told Officer Hellinger that his name was Bo Clark. Noting the similarity of description to that of James Woodard, the officer threatened to charge Appellant with giving a false name to a police officer. Appellant then admitted that he was James Woodard. Defense counsel objected at trial on the basis that the testimony only served to prejudice the jury against Appellant by the admission of irrelevant and collateral evidence of unrelated prior bad acts. The Commonwealth stated that this evidence was admissible at trial to establish residency and to rebut the testimony of defense witnesses that Appellant lived in Indianapolis.

The second alleged instance of error involves the testimony of Deputy Jensen. Deputy Jensen testified that during the early morning hours of February 18, 2001, he executed a traffic stop in Louisville. The driver (Appellant) told the officer that he did not have any identification on him, but that his name was James Woodard. Appellant also volunteered his social security number. When Deputy Jensen ran the number the name came back as Bo Clark. Appellant then told Deputy Jensen that he had legally changed his name from Bo Clark to James Woodard. Dispatch then informed the deputy that there was an arrest warrant for Bo Clark. The warrant and the arrest did not relate to the bar shooting incident. Appellant objected to this evidence both prior to and during trial on the basis that it was irrelevant and prejudicial. The trial court, in overruling Appellant's motion in limine to preclude this evidence, held that the probative value of this evidence outweighed any prejudicial effect. Specifically, the trial court held that Appellant's use of false identification to evade arrest is relevant and the jury should be allowed to weigh the evidence as the fact-finder.

The third alleged instance of evidentiary error involved the testimony of Detective Jones. Detective Jones testified that on April 17, 2001, Appellant appeared in court on charges unrelated to this case. As Appellant left the courtroom, he was approached by Detective Jones and Detective Terry. Detective Terry asked Appellant if his name was James Clayton Woodard. Appellant replied that it was not and showed Detective Terry his driver's license with the name of Bo Clark. In response to further questions from Detective Jones, Appellant told the detective that he had changed his name from James Woodard to Bo Clark. The detective then arrested Appellant on the charges arising from the bar shooting incident. The trial judge admitted this evidence, over Appellant's objection, stating that it was relevant and the jury should be allowed to weigh its value as the fact finder.

■ Abuse of discretion is the proper standard of review of a trial court's evidentiary rulings.[2] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles."[3] Appellant argues that it was prejudicial to admit the evidence of his name change and aliases. This, coupled with the evidence of the other bad acts, Appellant contends, was reversible error. Appellant further argues that this evidence should have been excluded under KRE 404(b), which provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." KRE 404(b)(1) provides that other crimes, wrongs, or acts, however, may be admissible "if offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ For testimony to be admissible pursuant to the relevancy standard, it must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[4] The particular testimony regarding the use of aliases and different names is relevant and admissible to show consciousness of guilt.[5] "Evidence of assumption of a false name following the commission of a crime is relevant as an admission 'by conduct, constituting circumstantial evidence of consciousness of guilt

and hence of the fact of guilt itself.' "[6] Here, each of the instances of misrepresentation by the Appellant occurred after the commission of the assault and upon the inquiry of a police officer. A reasonable jury could believe from this evidence that Appellant misrepresented himself with a consciousness of his guilt to avoid prosecution. The intricacies of Appellant's name change, whether legal or not, are of little concern. Rather, Appellant's repeated use of different names when confronted with accusations of crime, and when it served his interest, reveals consciousness of guilt. Moreover, the officer's testimony was not excessive. It merely made mention of the warrants and was used to establish Appellant's pattern of misrepresenting himself when confronted by police. The trial court did not err in its determination that the probative value substantially outweighed the prejudicial effect.[7]

■ Appellant's second argument is that the trial court erred when it did not grant a mistrial based upon Detective Jones' testimony concerning Michelle Riggs. During the Commonwealth's case in chief, Detective Jones testified regarding the demeanor of Riggs when the detective questioned her about the shootings. Detective Jones stated that Riggs was hostile and uncooperative, and seemed to be protecting Appellant. At that point, defense counsel objected and moved for a mistrial. The trial court sustained the objection and instructed the Commonwealth not to pursue that particular line of ques-

2. *Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 222 (1996).

3. *Goodyear Tire & Rubber Co. v. Thompson*, Ky., 11 S.W.3d 575, 581 (2000), *citing Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999).

4. KRE 401.

5. *See Adkins v. Commonwealth*, Ky., 96 S.W.3d 779, 793 (2003), *citing United States v. Ramirez–Jiminez*, 967 F.2d 1321, 1327 (9th Cir.1992).

6. *United States v. Guerrero*, 756 F.2d 1342, 1347 (9th Cir.1984), *quoting McCormick on Evidence* § 271, at 655 (2d ed.1972).

7. *See* KRE 403.

tioning. The court overruled Appellant's motion for mistrial. The Commonwealth adhered to the trial court's ruling and there was no further questioning concerning Detective Jones' interview with Riggs. Appellant did not request an admonition or any other limiting instruction concerning the testimony as to Riggs' demeanor.

It is well established that the decision to grant a mistrial is within the trial court's discretion, and such a ruling will not be disturbed absent a showing of an abuse of that discretion.[8] Moreover, a mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a "manifest necessity for such an action."[9] "The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way."[10] Any prejudicial effect Appellant may have suffered by the detective's comments on Riggs' demeanor was slight, and would not warrant the extreme remedy of a mistrial. We conclude there was not a fundamental defect affecting the proceedings resulting in manifest injustice, and thus the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

Appellant's third contention raised on appeal concerns his "for cause" motion to strike a deaf juror. During voir dire the defense moved to strike a juror for cause who was deaf and dependent upon an interpreter. Appellant stated that he was concerned that the juror would not be able to adequately fulfill her role in this case because the juror would be watching the interpreter, and thus would not be able to see the demeanor of the witnesses as they testified. At trial, Appellant objected regarding the deaf juror's inability to adequately fulfill her duties when the prosecution used a flip chart during a witnesses' testimony. The juror had previously shifted her eyes between the interpreter, the flip chart, and the witness, and Appellant argued that the juror was not able to properly observe the witnesses. The trial court remedied the situation by moving the location of the interpreter closer to the witness, and Appellant made no further objections or requests for relief.

On the assumption of proper preservation, a proposition not beyond dispute, the General Assembly has addressed the issue of disabled jurors, and specifically those who are deaf.[11] The statute states that "an individual with a disability shall not be disqualified solely by reason of the disability."[12] KRS 30A.410(1) takes this a step further and even outlines the requirements for appointing an interpreter for a deaf juror. Under Kentucky case law, there is only one case that directly addresses the issue presented here. In *Higgins v. Commonwealth*,[13] it was held that during voir dire a juror who is deaf should be struck for cause based on the fact of deafness.[14] This interpretation of the law in Kentucky is in contradiction with current statutes regarding disabled jurors and is inconsistent with modern thinking as to the role of disabled persons. We need not explore constitutional issues in this regard as the legislature has effective-

8. *Bray v. Commonwealth*, Ky., 68 S.W.3d 375, 383 (2002).

9. *Id.* at 383.

10. *Gould v. Charlton Co., Inc.*, Ky., 929 S.W.2d 734, 738 (1996).

11. KRS 29A.080.

12. KRS 29A.080(4).

13. Ky., 287 Ky. 767, 155 S.W.2d 209 (1941).

14. *Id.* at 212.

ly abrogated the *Higgins* case on this point by statute [15] and we likewise overrule it here. That being said, this decision turns on whether or not the deaf juror was able to properly perform her duties.

"The standard for review for a trial court's decision on a challenge for cause is whether there was an abuse of discretion." [16] Such a decision of "[w]hether a juror should be excused for cause is a matter within the sound discretion of the trial court." [17] The United States Court of Appeals for the Tenth Circuit has dealt with a situation similar to the case at bar, and we find that Court's opinion to be an appropriate statement of the law. *United States v. Dempsey* [18] dealt with a similar objection to a juror by the defendant, who contended that the juror could not accurately evaluate the demeanor of the witnesses. The trial judge attempted to minimize any adverse effect early in the trial by moving the interpreter closer to the witness stand so the juror could see both at the same time. The Court, commenting on the juror's inability to watch the witness at all times, stated that just because the juror "could not continuously evaluate the witnesses' demeanors does not mean that her ability to serve was impermissibly impaired." [19] The court also noted, "Many jurors have somewhat less than perfect hearing or vision, or have other limitations on their abilities to assimilate or evaluate testimony and evidence. A defendant is not entitled to a perfect trial, but only a fair one." [20]

In the case at bar, Appellant fails to present any evidence of prejudice by the participation of a deaf juror. Undoubtedly non-verbal cues of a witness can be as important as the spoken word. However, the hearing-impaired acquire techniques that allow them to communicate, understand, evaluate and otherwise compensate for their lack of hearing. This Court must afford every citizen the opportunity to serve as a part of the judicial system, when that person can reasonably perform his or her duties as a juror. Based on the record, we see no evidence that the juror in question was unable to perform her duties reasonably, and we see no abuse of discretion with respect to the trial court's decision not to strike for cause. Thus, denial of Appellant's motion to strike the juror for cause was not error.

Appellant's final argument is that the trial court erred by overruling his motion for a directed verdict because the Commonwealth failed to produce sufficient evidence to prove guilt. Appellant contends that all the evidence was circumstantial and witness descriptions as to the events, clothing, and activities concerning the participating parties varied greatly. This Court has set forth the standard of review for a denial of a directed verdict in *Commonwealth v. Benham,* [21] where this Court stated:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed ver-

15. KRS 29A.080(3).

16. *Bolen v. Commonwealth,* Ky., 31 S.W.3d 907, 910 (2000).

17. *Foley v. Commonwealth,* Ky., 953 S.W.2d 924 (1997).

18. 830 F.2d 1084 (10th Cir.1987).

19. *Id.* at 1088.

20. *Id.*

21. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991).

dict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.[22]

██ The jury considered several pieces of evidence that led it to a conviction. Proctor (a victim of the assault) testified that while at Joker's Bar, an argument started between himself, Appellant and Riggs. Appellant then flashed a gun at Proctor. Proctor further testified that Appellant was pointing a gun at the crowd and shot him in the abdomen. Proctor stated that after the shots he ran outside and saw Appellant getting into a vehicle that was waiting outside. Additionally, Hardin (the other victim) testified that after the initial argument Appellant and Riggs entered from the rear of the bar and made their way to the front of the bar. As they walked through the bar they looked around at the faces of each patron, looking for a particular person. Hardin further testified that he observed Appellant pointing a gun at the crowd. Hardin stated that immediately after this he heard the shots and felt a pain in his leg. Finally, Appellant was positively identified by Hardin from a police photo lineup.

Applying the *Benham* standard to the evidence as a whole we conclude the trial judge correctly determined that a reasonable jury could believe beyond a reasonable doubt that Appellant was guilty of two counts of second-degree assault. In this case the jury's decision of guilt is not "clearly unreasonable."[23]

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

GRAVES, JOHNSTONE, STUMBO, and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion in which KELLER, J., joins.

COOPER, Justice, dissenting.

Appellant was charged with shooting two men at Joker's Bar in Louisville on the night of November 18–19, 2000. Appellant did not contest that he was present in the bar on two occasions that night, but denied being the shooter or being present when the shots were fired. Thus, the only fact in issue was whether Appellant did or did not fire the shots. Appellant claims that he has legally changed his name on two occasions in the past, most recently in 1996 when he changed it from James Clayton Woodard to Bo Clark. As the majority opinion correctly notes, this fact is "not specifically relevant to the crime." *Ante,* at 65. Yet, the Commonwealth was permitted to use this fact to prove that Appellant (1) was charged with three unrelated criminal offenses and (2) gave the police an arguably false identification on each occasion.

Officer Hellinger testified that on November 22, 2000, two days after the shooting and before anyone identified Appellant as the alleged shooter, he went to Appellant's residence to serve an unrelated arrest warrant on "James Woodard," and that Appellant first identified himself as "Bo Clark," then admitted that he was formerly known as James Woodard.

22. *Id.* at 187.

23. *Id.*

Deputy Sheriff Jensen testified that on February 18, 2001, he stopped Appellant for a traffic offense. When Jensen asked Appellant for identification, Appellant told him that his name was "James Woodard" and recited his social security number. When Jensen checked the number, he learned that it had been assigned to "Bo Clark."

Detective Jones testified that when he arrested Appellant for the instant offenses on April 17, 2001, Appellant was in court on unrelated charges. Jones testified that when he asked Appellant if his name was "James Clayton Woodard," Appellant replied that his name was "Bo Clark," but later admitted that his former name was James Clayton Woodard.

It is elementary that evidence of "other crimes, wrongs or acts" is not admissible to prove the character of a person in order to show a criminal disposition or propensity. KRE 404(b); *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549, 552 (1985). To be admissible, such evidence must satisfy the three-part test of *Bell v. Commonwealth*, Ky., 875 S.W.2d 882 (1994), *viz:* (1) Is the evidence relevant? (2) Does it have probative value? (3) Is its probative value substantially outweighed by its prejudicial effect? *Id.* at 889–91.

### 1. Relevancy.

"With respect to the first inquiry, courts have emphasized the importance of requiring that the 'other crimes' evidence be offered to prove material facts that are in actual dispute." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.25[3][b], at 127 (4th ed. LexisNexis 2003). As an example, Professor Lawson cites the pre-Rules case of *Arnett v. Commonwealth*, Ky., 470 S.W.2d 834 (1971), a murder case in which the prosecution introduced evidence that earlier on the day of the murder, the defendant flourished a pistol during a confrontation with a person other than the murder victim. *Id.* at 836.

According to the Commonwealth, the purpose of this evidence was to show that the defendant possessed a weapon that could have been used to commit the murder. *Id.* However, since the defendant freely admitted possessing the weapon at the time of the homicide, the "other crimes" evidence was inadmissible because it had no relevance other than to show the defendant's propensity for violence. *Id.* at 837. *See also Alexander v. Commonwealth*, Ky., 450 S.W.2d 808, 809 (1970) (evidence in storehouse breaking case that defendant was in possession of other items of stolen property not relevant to prove motive or guilty knowledge). The Commonwealth argues that Hellinger's testimony was relevant to prove that Appellant lived in Louisville, not Indianapolis. But since Appellant admitted he was not only in Louisville but also in Joker's Bar on the night of the shootings, the location of his residence was not a material issue.

The majority opinion correctly notes that evidence that a defendant lied about his identity or gave the police an alias *at the time of his arrest on the charged offense* would be evidence of consciousness of guilt and within the "other purpose" exception in KRE 404(b)(1). *Adkins v. Commonwealth*, Ky., 96 S.W.3d 779, 793 (2003). *See also United States v. Ramirez–Jiminez*, 967 F.2d 1321 (9th Cir. 1992):

[T]he testimony objected to by appellant concerned acts made during and in furtherance of the crimes for which appellant was indicted . . . .

[T]he main source of prejudice would come from the jury drawing a *permissible* inference—namely that appellant was cognizant of the illegal act he was committing, and was therefore lying to cover his guilt.

*Id.* at 1327–28 (emphasis added).

The problem here is that the allegedly false identification given to Officer Helling-

er on November 22, 2000, and to Deputy Jensen on February 18, 2001, was in reference to completely different charges than the ones for which he was being tried in this case. Thus, while the allegedly false identification evidence might have been relevant evidence at a trial of those respective charges, it was completely irrelevant to whether he was the shooter at Joker's Bar on November 18–19, 2000. It only tended to prove that he was a liar who possessed a disposition or propensity for criminal conduct. While the allegedly false identification Appellant gave to Detective Jones when he was arrested on April 17, 2001, was marginally relevant (assuming it was false), evidence that the arrest occurred while Appellant was in court facing other, unrelated charges was irrelevant except to compound the proof of his general propensity to criminal conduct.

### 2. Probativeness.

This aspect of the *Bell* test relates to whether there is sufficient evidence that the "other crime, wrong, or act" actually occurred. *Bell,* 875 S.W.2d at 890; Lawson, *supra,* § 2.25[3][c], at 130–31. If Appellant's name really is "Bo Clark" and not "James Clayton Woodard," Appellant did not lie either to Officer Hellinger or to Detective Jones. If he intended to give a false name to Deputy Jensen, it seems odd that he would have furnished Jensen with his social security number knowing that the number would identify him as "Bo Clark." Given the circumstances surrounding the three incidents in question, a jury could not reasonably infer that the alleged prior bad acts (giving the arresting officers a false name) even occurred. *Compare Parker v. Commonwealth,* Ky., 952 S.W.2d 209, 214 (1997).

### 3. Prejudice.

The trial court concluded that the prejudicial effect of this evidence did not substantially outweigh its probative value.

KRE 403. However, since proof that Appellant resided in Louisville and that he was conscious of his guilt of unrelated offenses was irrelevant to prove any material fact at issue in this case, there was no probative value to weigh. The prejudicial effect of evidence that Appellant was charged with three unrelated offenses is obvious. Thus, I conclude that the trial court abused its discretion in admitting this evidence.

Accordingly, I dissent.

KELLER, J., joins this dissenting opinion.