RENDERED: OCTOBER 23, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-0794-MR

DARYL COUCH                                            APPELLANT

                APPEAL FROM LIVINGSTON CIRCUIT COURT
v.                 HONORABLE C.A. WOODALL, III, JUDGE
                        ACTION NO. 16-CR-00025

COMMONWEALTH OF KENTUCKY                      APPELLEE

AND                     NO. 2018-CA-0795-MR

HAROLD SMITH                                     APPELLANT

                APPEAL FROM LIVINGSTON CIRCUIT COURT
v.                 HONORABLE C.A. WOODALL, III, JUDGE
               ACTION NOS. 16-CR-00026 & 16-CR-00027

COMMONWEALTH OF KENTUCKY                      APPELLEE

AND                              NO. 2018-CA-1642-MR


HAROLD SMITH                                           APPELLANT



                  APPEAL FROM LIVINGSTON CIRCUIT COURT
v.                  HONORABLE C.A. WOODALL, III, JUDGE
                   ACTION NOS. 16-CR-00026 & 16-CR-00027



COMMONWEALTH OF KENTUCKY                                APPELLEE



                              OPINION
                        VACATING & REMANDING
              AS TO APPEAL NOS. 2018-CA-0794 & 2018-CA-1642
                                AND
         AFFIRMING IN PART, VACATING IN PART, & REMANDING
                     AS TO APPEAL NO. 2018-CA-0795

                         ** ** ** ** **

BEFORE:  CALDWELL, JONES, AND TAYLOR, JUDGES.

JONES, JUDGE:  In April of 2018, Harold Smith and Daryl Couch were tried

together on drug-related charges before a single jury in the Livingston Circuit

Court following their arrests on October 14, 2015.  The jury found Smith guilty of

the cultivation of marijuana, five or more plants, subsequent offense, in violation

of KRS[1] 218A.1423, and guilty of trafficking in marijuana, less than eight ounces,

---

[1] Kentucky Revised Statutes.

-2-

subsequent offense, in violation of KRS 218A.1421; it found Couch guilty of cultivation of marijuana, five or more plants, first offense, in violation of KRS 218A.1423. The trial court sentenced Smith to ten years' imprisonment for the cultivation conviction and five years' imprisonment for the trafficking conviction with the sentences to be served consecutively for a total of fifteen years' imprisonment. Couch was sentenced to five years' imprisonment.[2] Acting with the assistance of separate counsel, Smith and Couch each filed a direct appeal with this Court: (1) *Couch v. Commonwealth*, No. 2018-CA-0794-MR; and (2) *Smith v. Commonwealth*, No. 2018-CA-0795-MR. Smith then filed a *pro se* appeal attacking a subsequent forfeiture order entered by the trial court: *Smith v. Commonwealth*, No. 2018-CA-1642-MR.[3]

In their main appeals, Smith and Couch both argue that the trial court erred when it refused to include a jury instruction on possession of marijuana as a lesser-included offense of cultivation of marijuana and/or trafficking in marijuana. Smith also makes the additional argument that the trial court erred when it refused

---

[2] Couch's cultivation conviction was a Class D felony as he had not previously been convicted of that offense, whereas Smith was a subsequent offender making Smith's conviction a Class C felony. This difference accounts for the discrepancy in the length of the sentences Couch and Smith received for their cultivation convictions.

[3] In 2019, Smith filed another *pro se* appeal, No. 2019-CA-0426-MR, asking this Court to order the trial judge, the Hon. C.A. Woodall, III, to be recused from all further matters affecting his criminal cases. That appeal was also assigned to this panel for decision. That appeal has been dismissed for lack of jurisdiction by separate order.

to declare a mistrial after a witness testified that Smith was known to be a "large grower [of marijuana] in the area from eastern Kentucky." Smith's separate, *pro se* appeal asserts the trial court denied him due process when it ordered certain property forfeited following his convictions.[4] While we disagree with respect to the mistrial and trafficking conviction, we agree with Smith and Couch that the trial court erred when it failed to instruct the jury on possession of marijuana as a lesser-included offense of cultivating marijuana. Accordingly, we must vacate and remand the judgments entered against Couch and Smith with respect to their individual cultivation of marijuana convictions. Because the order of criminal forfeiture arose out of the cultivation conviction, we must vacate and remand that order as well.

## I. BACKGROUND

Smith and Couch were arrested on October 14, 2015, after a large amount of marijuana was seized from a camper where they were staying in Livingston County, Kentucky. Smith was indicted for cultivating marijuana, more than five plants, subsequent offense, and trafficking in marijuana, less than eight ounces, subsequent offense. Couch was indicted for cultivation of marijuana, more

---

[4] The three appeals share a record, arise out of a common set of facts, and involve similar legal issues. In the interests of judicial economy, each appeal was assigned to this panel for decision, and we have likewise determined that the most efficient manner to adjudicate these appeals is through a combined opinion addressing all three appeals.

than five plants, first offense. Both men pleaded not guilty and a joint trial was conducted on April 19, 2018. The Commonwealth's two primary witnesses were Morgan Crayne,[5] a confidential informant, and Detective Mike Lantrip, a state law enforcement official assigned to the Pennyrile Narcotics Task Force, who headed up the investigation that led to the arrests of Couch and Smith. The Commonwealth also called Terry Nunely, the Assistant Director of the Pennyrile Narcotics Task Force, and David Hack, the laboratory director for the Kentucky State Police. Couch testified on behalf of Appellants.

The Commonwealth's first witness was Morgan Crayne. In late 2014 or early 2015, Crayne reached out to law enforcement officers about the possibility of working as a confidential informant. After a preliminary meeting, the Pennyrile Narcotics Task Force decided to take Crayne on as one of its confidential informants. At the time of trial, Crayne had worked for the Commonwealth on numerous drug-related cases. He was paid in cash, generally after a successful arrest was made by the Commonwealth. The amount varied from case to case. He estimated that he had received over $30,000.00 for his work over the last four years; he was paid $1,000.00 for his work leading to the arrests of Couch and Smith.

---

[5] The Appellants use two different spellings of Morgan's surname throughout their briefs: "Crayn" and "Crayne." Morgan testified at trial that his surname is spelled "Crayne" and that is the spelling we use throughout this opinion.

Crayne testified that he had known Smith since the two were incarcerated together several years earlier. They kept in contact with one another after they were released. Crayne suspected Smith of being involved with marijuana. He informed Detective Lantrip about his suspicions after he began working as an informant, prompting the Pennyrile Narcotics Task Force to begin investigating Smith and his activities. Sometime in the spring of 2015, Crayne asked Smith to accompany him on a trip to look at a house Crayne was thinking about renting. Smith brought Couch along with him on the trip. This was the first time Crayne had met Couch. Crayne wore a recording device on this trip but nothing of substance appears to have been recorded.

In early October of 2015, Smith called Crayne and told him that he and Couch were on a racoon hunting trip in Livingston County and were staying at the Birdsville Campground in Smithland, Kentucky. Crayne relayed this information to Detective Mike Lantrip. Detective Lantrip asked Crayne to visit the campsite to ascertain whether there were any drugs there. Detective Lantrip also secured a warrant to place a GPS tracking device on Smith's truck as he suspected that Smith and Couch were in the area to harvest marijuana. The device was placed on Smith's truck by local law enforcement officials in the parking lot of a convenience store where Smith and Couch had stopped to get supplies.

Per the instructions of law enforcement, Crayne planned to visit the Birdsville campsite where Smith and Couch were staying on October 14, 2015. Prior to driving to the campsite, Crayne met with law enforcement officials who searched him to make sure he did not have any drugs or contraband on his person. Detective Lantrip could not recall whether law enforcement also searched Crayne's vehicle. Crayne arrived at the campsite sometime around noon or one o'clock in the afternoon. He observed a small camper where the men were staying and a truck with a metal dog kennel in the back. There were also one or two dogs on site. Crayne testified that when he arrived, Smith had just woken up for the day. Smith invited Crayne into the camper. The men talked for about forty-five minutes, mostly about racoon hunting. Before Crayne departed, Smith retrieved a small bag of marijuana from a cabinet under or near the camper's sink area and gave it Crayne. No money was exchanged. It was not entirely clear from the testimony whether Crayne had asked Smith for marijuana or whether it was an unprompted, gratuitous act.

Crayne then left the campsite and met back up with law enforcement officers. Crayne gave the marijuana, which he testified appeared to him to be freshly cut, to Detective Lantrip. Crayne told Detective Lantrip that he thought he saw a few small bags of marijuana in the cabinet where Smith retrieved the bag he

gave to Crayne, but he was not certain of the overall quantity. He did not see any other marijuana or drugs in the camper.

Crayne returned to the campsite a second time later that day to see if Smith and Couch were onsite. Crayne testified that as he was making his way to the camper, he observed Couch remove something from the back of the truck and take it inside the camper. He was unable to ascertain what Couch removed; he did not see Smith. Crayne left without making contact with either Smith or Couch.

As he was leaving the campsite, Crayne called Detective Lantrip and reported what he had seen. Detective Lantrip asked Crayne to return to the campsite to determine whether there was additional marijuana inside the camper. Crayne was not searched prior to this third trip, but he did wear a recording device. Crayne testified that as he approached, he startled Couch who was in the process of exiting the camper. Crayne said Couch acted nervous and scared as he went back inside the camper to get Smith. Smith exited the camper and had a short conversation with Crayne. The audio of the conversation was played at trial; however, the sound quality is extremely poor, making it nearly impossible to make out the nature of the men's conversation. As a result, the Commonwealth asked Crayne to tell the jury what Smith said to him. Crayne testified that Smith told him that it was not a good time for him to be there because they were cleaning "pot" in

the camper. Smith did not invite Crayne inside the camper, so he was not able to actually observe any marijuana himself.

Crayne left the campsite with plans to meet back up with law enforcement. He testified that he had not gotten very far away when he received a call from Smith, who asked him to return and help them clean the marijuana. Crayne called Detective Lantrip and asked if he should return to the campsite. Detective Lantrip told him not to go back because he was already in the process of obtaining a warrant that law enforcement would be executing later that evening.

Detective Lantrip testified that after receiving the initial information from Crayne, he began monitoring the GPS tracking device that was placed on Smith's truck. Based on the movements, he believed Smith and Couch were likely moving marijuana. He testified that at some point that evening, law enforcement began following Smith's truck, but it kept turning around without stopping. He believed that whoever was driving the truck had likely surmised that it was being followed by someone; this prompted law enforcement to stop following the truck so as not to blow their cover.

Based on the GPS movements and Crayne's information, law enforcement secured a warrant for the campsite, truck, and camper. At approximately 10:50 p.m., detectives and several deputies executed the warrant. Both Smith and Couch were at the camper. Smith came to the door with a box

cutter in his hand. Couch was located inside the camper. Detective Lantrip testified that marijuana was all over the camper. In total, 22.4 pounds of marijuana was seized from inside the camper, in addition to several smaller bags of marijuana that were found in the cabinet under the sink where Crayne said Smith retrieved the bag given to him. Detective Lantrip testified that the 22.4 pounds was equivalent to approximately twenty-two marijuana plants, and that in his professional experience this quantity of marijuana would not be consistent with personal use. Officers also located ceramic heaters in the camper that had been purchased the previous day and a GPS dog tracking system. Detective Lantrip testified that the heaters were most likely being used to speed up the drying process. He believed the GPS dog tracking system was being used to mark and then locate where the marijuana was hidden so that it could be picked up under the cover of darkness.

Smith's cellular telephone was also seized and searched by police. A series of text messages between Smith and his son were introduced by the Commonwealth. In one text, Smith's son asked, "What are you doing[?]" Smith responded, "Cutting hell down[.]" Smith also stated he got "all that cut across the road[.]" Later in the evening Smith told his son that he was sitting on the side of the road waiting for Couch to pick him up, but that Couch was having problems because someone was after him.

Couch testified on behalf of Appellants. His version of events was markedly different from Crayne's version. Couch testified that he had known Smith his whole life and that the two regularly racoon hunted together throughout the year. Couch explained that he took his dogs hunting year-round, even though it was only legal to kill racoons at certain times of the year. Couch explained that he breeds and trains hunting dogs, and the off-season trips are necessary to properly teach the dogs how to hunt. He testified that he liked to hunt in the Livingston County area because there were more racoons in western Kentucky and the terrain was flatter and easier to navigate on foot than it was in eastern Kentucky.

Couch admitted that he was a regular marijuana smoker. He testified that he was abused as a child and suffers from PTSD. He believes that smoking marijuana helps alleviate his PTSD symptoms. Couch testified that he had a small bit of marijuana on his person during the hunting trip, which he planned to smoke himself. He denied knowing about the marijuana in the cabinet under the sink and denied that either he or Smith were cultivating marijuana during their trip. He testified that Crayne visited the two around noon on October 14, 2015, as he and Smith were waking up. Later in the day, he testified that he went raccoon hunting with Smith but that the dogs wandered onto private property and Smith went looking for them. He said that as he was driving around looking for Smith, he noticed that someone was following him. He said he was scared because he

thought it was a landowner who was upset about their dogs going onto private property. He believes this is what Smith was referring to when he texted his son that someone was after Couch. He denied that he was picking up any marijuana or that he had any knowledge that Smith had been harvesting marijuana earlier that day.

Couch testified that later in the evening after he and Smith had returned to the camper, Crayne showed up in his truck. He said that Crayne called him and Smith over to his truck and said that he had something to show them. Couch testified that Crayne pulled back something to reveal garbage bags containing marijuana. At this point, Couch said he walked away, and Smith took the marijuana inside the camper. Couch said he does not know what transpired between Crayne and Smith after he walked away. Couch admitted that he helped to clean the marijuana, which was fresh cut, but denied that he and Smith had helped Crayne cut down the marijuana. Couch testified that he planned to keep whatever he could of the marijuana for personal consumption; he had no plans to sell it. He thought that it would take him a year to smoke that much marijuana, and he was willing to try to smoke it all.

Couch denied that they were using the GPS dog tracking system to locate hidden marijuana. He said the system only held a charge for eight to twelve hours and was used to locate the dogs while they were hunting.

Following the conclusion of testimony, Couch and Smith requested the trial court to instruct the jury on possession of marijuana as a lesser-included offense of cultivation and trafficking. Defense counsel pointed out that the testimony at trial created a factual issue with respect to whether Crayne transferred the marijuana found in the camper to Smith and Couch. Counsel noted that if the jury believed Couch, the Commonwealth could not prove that Smith and Couch had cultivated the marijuana earlier in the day. The trial court ultimately refused to give the requested instruction for possession, stating it agreed with the Commonwealth's argument that the quantity of marijuana found in the camper was inconsistent with possession.

The jury found Smith guilty of the cultivation of marijuana, five or more plants, subsequent offense, in violation of KRS 218A.1423, and guilty of trafficking in marijuana, subsequent offense, less than eight ounces, in violation of KRS 218A.1421; it found Couch guilty of the cultivation of marijuana, five or more plants, first offense, in violation of KRS 218A.1423. The trial court sentenced Smith to ten years' imprisonment for the cultivation conviction and five years' imprisonment for the trafficking conviction with the sentences to be served consecutively for a total of fifteen years' imprisonment. Couch was sentenced to five years' imprisonment.

These appeals followed.

## II. ANALYSIS

### A. *Smith's Motion for a Mistrial*

As noted, Crayne was the first witness called to testify. As the Commonwealth was attempting to lay a foundation, it asked Crayne what he had previously told Detective Lantrip about Smith that caused law enforcement to launch their investigation. Crayne responded that he told Detective Lantrip that Smith was "a large grower in the area from eastern Kentucky." Smith's counsel immediately objected to this testimony. During a short bench conference, the trial court sustained the objection, which the Commonwealth conceded was proper. The Commonwealth added that it was not trying to illicit improper testimony of prior bad acts but was simply trying to lay a foundation. The Commonwealth agreed not to pursue that line of questioning any further.

Defense counsel then moved for a mistrial. The trial court denied the motion for a mistrial stating that it believed that an admonition could cure any prejudicial effect from the statement, and that it would give one if defense counsel so desired. Defense counsel responded that while it did not believe an admonition could sufficiently cure the prejudice, it nonetheless wanted the trial court to admonish the jury if the trial court was not going to declare a mistrial. The trial court then admonished the jury as follows:

> Ladies and gentlemen on the testimony that Mr. Crayne
> has just given you about what he told Detective Lantrip,

-14-

you're not to regard that. You're to disregard that, and not consider that as any evidence of guilt on either defendant's part as far as the crime that they are on trial here for today. So disregard that last testimony.

On appeal, Smith argues that Crayne's testimony that Smith was a "large grower" created a manifest necessity for a mistrial because the statement was of such magnitude that it could not be cured by an admonition. Smith contends that the trial court's failure to grant a mistrial denied him due process.

Mistrials are highly disfavored. As recently explained by the Kentucky Supreme Court, a mistrial is proper only in cases of the most extreme prejudice.

> "[A] mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a 'manifest necessity for such an action.'" *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004) (citing *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002)). "The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way." *Woodard*, 147 S.W.3d at 68 (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996)). A trial court's decision to grant a mistrial must be supported by a "manifest necessity" for that decision in the record. *Wiley* [*v. Commonwealth*,] 575 S.W.2d [166, 168 (Ky. App. 1978)] (citations omitted). This necessity must be "an urgent and real necessity." *Id.* (quoting *Baker v. Commonwealth*, 280 Ky. 165, 132 S.W.2d 766 (1939)).

> A mistrial is reserved for unique circumstances in which the prejudice is so great that a trial cannot continue fairly for both parties. "[T]he power to grant a mistrial

-15-

ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." *Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009) (quoting *Commonwealth v. Scott*, 12 S.W.3d 682, 685 (Ky. 2000) (citing *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991))).

*Commonwealth v. Padgett*, 563 S.W.3d 639, 646 (Ky. 2018).

This high standard results from the presumption that an admonition can cure a defect in testimony. *Price v. Commonwealth*, 59 S.W.3d 878, 881 (Ky. 2001). "The presumption that a jury will follow a curative admonition is overcome only when there is an overwhelming likelihood that the jury will be incapable of following the admonition and the impermissible testimony would be devastating to the appellant." *St. Clair v. Commonwealth*, 455 S.W.3d 869, 892 (Ky. 2015). The trial court has broad discretion in deciding whether an admonition is sufficient, and its decision to deny a motion for a mistrial should not be disturbed absent an abuse of discretion. *Id.*

Crayne's statement was isolated, discrete, and brief. The Commonwealth did not purposefully illicit the statement and did not request Crayne to elaborate on it. Smith's counsel immediately objected to the statement, and the Commonwealth agreed not to probe further. Additionally, the jury could have easily surmised on its own that Crayne believed Smith to be involved in marijuana cultivation and/or trafficking by virtue of the fact that Crayne alerted law enforcement to Smith's presence in the area. "This Court cannot say that the

testimony that [Smith] now complains of was so devastating that it could not be overcome by an admonition. Thus, the trial court's choice of that remedy over granting a mistrial was not an abuse of discretion, and does not require reversal." *Id.*

### B. Lesser-included Offense Instructions

"It is well established in this Commonwealth that a trial court has a duty to instruct based on the facts in evidence before it." *Roberts v. Commonwealth*, 599 S.W.3d 841, 854 (Ky. 2020). "Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it." *Beard v. Commonwealth*, 581 S.W.3d 537, 541 (Ky. 2019) (quoting *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015)). "In a criminal case it is the duty of the court to prepare and give instructions on the whole law and this rule requires instructions applicable to every state of case deducible or supported to any extent by the testimony." *Kelly v. Commonwealth*, 267 S.W.2d 536, 539 (Ky. 1954) (citations omitted). "This obligation extends to lesser-included offenses and affirmative defenses, but is dependent upon there being sufficient evidence to warrant the giving of an instruction." *Roberts*, 599 S.W.3d at 854 (citing *Grimes v. McAnulty*, 957 S.W.2d 223, 226 (Ky. 1997)). "The trial court has no duty to instruct on theories of the case that are unsupported by the evidence." *Driver v. Commonwealth*, 361 S.W.3d 877, 888 (Ky. 2012).

-17-

"[T]he trial court's standard for instructing on a lesser-included offense is: unless the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged but conclude that he is guilty of the lesser-included offense, the lesser-included instruction should not be given." *Beard*, 581 S.W.3d at 543. "Upon review, we likewise consider whether the trial court erred by refusing to give a lesser-included offense instruction under the 'reasonable juror standard.'" *Id.* at 542 (citing *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013)).[6]

---

[6] Our Supreme Court has explained that assigning a precise label to this standard of review is often imprecise and somewhat misleading. It can be labeled as *de novo* or abuse of discretion. Regardless of the label, however, the appellate court must consider the propriety of a lesser-included offense instruction based on the "reasonable juror standard."

> As noted, we review a trial court's decision not to give a criminal offense jury instruction under the same "reasonable juror" standard we apply to the review of its decision to give such an instruction. *See Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991). Construing the evidence favorably to the proponent of the instruction, we ask whether the evidence would permit a reasonable juror to make the finding the instruction authorizes. We typically do not characterize our review under this standard as either *de novo* or for abuse of discretion, but in some recent cases we have and it may appear that we have done so inconsistently. *See Hunt v. Commonwealth*, 304 S.W.3d 15, 31 (Ky. 2009) ("The trial court's decision not to give a jury instruction is reviewed for abuse of discretion."); *Cecil v. Commonwealth*, 297 S.W.3d 12, 18 (Ky. 2009) ("We review the trial court's rulings with respect to jury instructions for abuse of discretion."); *Morrow v. Commonwealth*, 286 S.W.3d 206, 209 (Ky. 2009) ("Because this matter turns on the trial court's determination as to whether to tender a jury instruction, we will engage in a *de novo* review."). In this context, the characterization makes little difference and so the inconsistency is more apparent than real. On the one hand, if the evidence supports an instruction that is otherwise appropriate, the proponent is entitled to the instruction as a matter of law, and to

-18-

In applying the reasonable juror standard, it is important not to confuse the sufficiency of the evidence with its credibility. The trial court should determine whether there is sufficient evidence to warrant giving the lesser-included offense instruction; however, it should not invade the province of the jury by weighing the believability of that evidence. "Deciding whose version to believe and weighing witness credibility is entirely within the jury's discretion." *Hall v. Commonwealth*, 337 S.W.3d 595, 610 n.52 (Ky. 2011) (quoting *Robinson v. Commonwealth*, 325 S.W.3d 368, 371 (Ky. 2010)). Even if the testimony that supports a defense theory is highly unlikely, the jury must nonetheless have the opportunity to consider it. "[N]o matter how preposterous, any defense which is supported by the evidence must be submitted to the jury." *Taylor v. Commonwealth*, 995 S.W.2d 355, 361 (Ky. 1999). "[I]t is the privilege of the jury to believe the unbelievable if the jury so wishes." *Mishler v. Commonwealth*, 556 S.W.2d 676, 680 (Ky. 1977).

---

emphasize that entitlement, as we did in *Morrow,* our review can be characterized as *de novo*. On the other hand, to emphasize that the sufficiency of the evidence is measured against a reasonableness standard—the reasonable juror—as we did in *Cecil*, our review can be characterized as for abuse of discretion. Regardless of the characterization, however, the "reasonable juror" is the operative standard, in the appellate court as well as in the trial court.

*Allen v. Commonwealth*, 338 S.W.3d 252, 255 n.1 (Ky. 2011).

-19-

A lesser-included offense is one that is established by proof of the same or less than all of the facts required to prove the primary offense. KRS 505.020(2)(a). Smith and Couch each assert that the trial court committed reversible error when it failed to instruct the jury on possession of marijuana as a lesser-included offense of cultivating marijuana.

KRS 218A.1423 provides:

(1) A person is guilty of marijuana cultivation when he knowingly and unlawfully *plants, cultivates, or harvests* marijuana with the intent to sell or transfer it.

. . .

(4) The planting, cultivating, or harvesting of five (5) or more marijuana plants shall be prima facie evidence that the marijuana plants were planted, cultivated, or harvested for the purpose of sale or transfer.

KRS 218A.1423 (emphasis added). In contrast, KRS 218A.1422 provides that "(1) A person is guilty of possession of marijuana when he or she knowingly and unlawfully possesses marijuana."

In *Commonwealth v. Swift*, 237 S.W.3d 193 (Ky. 2007), the Kentucky Supreme Court held that possession of marijuana could, in some circumstances, be a lesser-included offense of cultivation of marijuana. The marijuana at issue in *Swift* was first discovered during the execution of a search warrant at Swift's home. The warrant was obtained after officers investigating a domestic dispute at Swift's house observed a marijuana cigarette in an ashtray.

-20-

The warrant allowed law enforcement to search Swift's home and yard, a travel trailer parked in the yard, as well as any other vehicles or persons on the premises. During the search, six bags of marijuana and some pipes were found inside the house; thirty marijuana plants and 172 potted marijuana seeds were found in the backyard; and almost two pounds of marijuana and some methamphetamine was found inside the travel trailer. Swift was indicted on one count of cultivating marijuana, more than five plants, while in possession of a firearm; one count of possession of drug paraphernalia, while in possession of a firearm; one count of trafficking in marijuana, more than eight ounces, while in possession of a firearm; and one count of trafficking in a controlled substance (methamphetamine) in the first degree.

At trial, Swift testified that he was a longtime marijuana user and that the marijuana found in the house was his personal "smoke bag." He testified that his stepson lived in the travel trailer, and that he did not have any knowledge regarding its contents. He admitted knowing about the plants and seeds found in his backyard, but claimed that his stepson planted and tended to them without his assistance. Swift unsuccessfully requested the trial court to give a jury instruction on possession of marijuana as a lesser-included offense of cultivation of marijuana. The jury convicted Swift of cultivating marijuana (over five plants), trafficking in marijuana (over eight ounces), and possession of drug paraphernalia. On direct

appeal, our Court held that the trial court erred by failing to give a jury instruction on possession of marijuana as a lesser-included offense of cultivation of marijuana. The Commonwealth petitioned the Kentucky Supreme Court for discretionary review, which it granted.

Before the Supreme Court, the Commonwealth argued that there was no evidence to support a finding that Swift was not guilty of cultivation of marijuana but was guilty of possession of marijuana. The Supreme Court disagreed. In doing so, it cited Swift's testimony that while he knew about the marijuana plants and seeds in his yard, he was indifferent to their existence and did not actively participate in their cultivation. If the jury believed Swift's version of the facts, he could be found guilty of constructive possession but not guilty of cultivation. The Court held that "[u]nder the evidence, a juror could have reasonably concluded that Swift did not cultivate the marijuana plants and potted seeds but did possess those items under the constructive possession doctrine." *Id.* at 196.

The Court contrasted Swift's case with *Commonwealth v. Collins*, 821 S.W.2d 488 (Ky. 1991), an earlier case in which the Court had held that the evidence did not support inclusion of a possession instruction as a lesser-included offense of cultivation of marijuana. The Court noted that in *Collins* it had "ultimately held that an instruction on possession of marijuana as a lesser-included

-22-

offense of cultivation of marijuana was not warranted—not because possession of marijuana was not a lesser-included offense of cultivation of marijuana—because the defendant in *Collins* denied all knowledge of the marijuana's existence, meaning that there was no evidence to support a possession instruction." *Swift*, 237 S.W.3d at 196.

The witnesses in this case presented two conflicting explanations regarding how Couch and Smith came to be in possession of the twenty-two pounds of marijuana inside the camper. The Commonwealth contended that Smith and Couch had harvested the marijuana earlier that day and brought it back to the camper. The Commonwealth pointed out that Crayne testified that the marijuana was not in the camper when he visited it earlier, and the text messages retrieved from Smith's telephone indicated that Smith had been cutting the marijuana earlier that day and with Couch's assistance the two men transferred it to the camper for processing.

In contrast, however, Couch testified that he and Smith had come to Livingston County to racoon hunt with their dogs, which they had been out doing shortly before Crayne arrived at their camper that evening. Couch testified that Crayne brought the marijuana to their campsite in the back of his truck, and that Smith brought it inside the camper where Couch agreed to help clean it. Couch

testified that he planned to keep whatever he could of the marijuana to smoke for himself, as he smoked marijuana several times a day.

Couch's testimony certainly had some holes in it. It was not the most believable. Weighing the credibility of the testimony, however, is the role of the jury. For our purposes, we must ask only whether Couch's testimony would have been sufficient for a reasonable jury to convict Couch and Smith on possession, but not cultivation, if they believed Couch's testimony was true.

There was little to no direct evidence that Smith and Couch planted or harvested any marijuana. The text messages and movement of Smith's truck on the night in question were ambiguous, and Couch explained that he was driving the truck around looking for Smith after the dogs had gone onto someone's private property that evening. The other texts used the term "cut," but there was no affirmative proof that those texts referred to marijuana. To counter these points, the Commonwealth argued that the jury could not reasonably believe possession would be an appropriate verdict given the amount of marijuana seized from the camper. However, the amount of marijuana found in the camper was less than the thirty plants at issue in *Swift*. More importantly, as between cultivation and possession, the distinguishing element is not the quantity of marijuana but rather whether the defendants planted, cultivated, or harvested the marijuana themselves or obtained it in some other fashion. If the jury believed Couch, they could find

that Smith and Couch did not plant, cultivate, or harvest the marijuana, making them not guilty of cultivation, but at the same time find that they knowingly took possession of the marijuana from Crayne, making them guilty of possession.

Having reviewed the testimony, we must agree that the evidence was sufficient to allow a reasonable jury to find that Smith and Couch were not guilty of cultivation but were guilty of possession. As such, we hold the trial court erred when it refused to include possession as a lesser-included offense of cultivation. Because "[t]he trial court's failure to give a necessary lesser-included offense instruction cannot be deemed a harmless error," we must vacate Smith's and Couch's cultivation convictions and remand for further proceedings consistent with this opinion. *Swift*, 237 S.W.3d at 196.[7]

Since the jury found Couch guilty of only cultivation, this disposes of his appeal, No. 2018-CA-0794-MR, in its entirety. It likewise disposes of appeal No. 2018-CA-1642-MR, since the forfeiture order at issue in that appeal arose in large part out of Smith's conviction for cultivation as much of the forfeiture was

---

[7] We note that in the unpublished opinion of *Luttrell v. Commonwealth*, No. 2016-SC-000667-MR, 2018 WL 898699, at *5 (Ky. Feb. 15, 2018), the Kentucky Supreme Court cited another unpublished opinion, *Bryan v. Commonwealth*, No. 2015-SC-000467-MR, 2017 WL 1102825, at *4 (Ky. Mar. 23, 2017), for the proposition that whether harmless error applied to the trial court's failure to provide a lesser-included offense instruction was possibly in question notwithstanding the language in *Swift*. S*wift* is published and, therefore, binding on this Court. We must follow published authority irrespective of the fact that more recent unpublished authority might call it into question. Moreover, most recently, the Supreme Court applied *Swift* without any citation to or mention of *Luttrell* or *Bryan*. *See Miller v. Commonwealth*, No. 2018-SC-000648-MR, 2020 WL 1290350, at *7 (Ky. Feb. 20, 2020).

predicated on the facts surrounding the cultivation conviction. Accordingly, we must vacate and remand the order of forfeiture as well.

We now turn to Smith's argument that the trial judge should have also instructed the jury on possession as a lesser-included offense to trafficking. Smith was convicted of trafficking in marijuana, *less than eight ounces*, in violation of KRS 218A.1421. This conviction was based on the small bag of marijuana Crayne testified he received after he first visited the trailer. In contrast to the cultivation charge, Couch disclaimed all knowledge of this marijuana. However, he did not affirmatively deny that Smith gave Crayne some marijuana. Crayne turned this marijuana over to Detective Lantrip. There was no evidence it was found in Smith's possession when the search warrant was executed. Based on the evidence, the jury had to either believe that Smith transferred the marijuana to Crayne, making him guilty of trafficking, or that Crayne obtained the marijuana on his own and lied to law enforcement about its origins, making Smith not guilty. There was no evidence presented that would allow the jury to find Smith guilty of only possession of this marijuana. Accordingly, the trial court properly refused to give a possession instruction as a lesser-included offense of trafficking.

### III. CONCLUSION

In conclusion, for the reasons set forth above: (1) as to appeal No. 2018-CA-0794-MR we vacate and remand the Livingston Circuit Court's May 17, 2018 judgment and sentence against Daryl Couch; (2) as to appeal No. 2018-CA-1642-MR, we vacate and remand the Livingston Circuit Court's October 8, 2018 order of forfeiture; and (3) as to appeal No. 2018-CA-0795-MR, we affirm the Livingston Circuit Court's May 17, 2018 judgment and sentence against Harold Smith with respect to Smith's conviction and sentence for trafficking in marijuana, less than eight ounces, subsequent offense, but we vacate and remand the judgment and sentence with respect to Smith's conviction and sentence for cultivation of marijuana, five or more plants, subsequent offense.

ALL CONCUR.

BRIEF FOR APPELLANT
DARYL COUCH,
APPEAL NO. 2018-CA-0794-MR:

Janet L. Stumbo
Van Lear, Kentucky


BRIEF FOR APPELLANT
HAROLD SMITH,
APPEAL NO. 2018-CA-0795-MR:

Ned Pillersdorf
Prestonburg, Kentucky


BRIEF FOR APPELLANT
HAROLD SMITH,
APPEAL NO. 2018-CA-1642-MR:

Harold Smith, *pro se*
Paducah, Kentucky

BRIEFS FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky